PEORIA, DECATUR & EVANSVILLE RAILWAY COMPANY

v.

A. F. ATEN.

SAME

v.

JOHN F. ATEN.

*Railroads—Negligence—Killing of Stock—Fences—Gate at Farm Crossing—Signals—Failure to Sound.*

1. Failure to comply with the statute concerning signals by a railroad company will not justify a judgment against it in an injury case, unless it appears by the facts and circumstances preponderating, that the accident was the result of such neglect.

2. Evidence that tracks of a horse or horses apparently made while running, were seen on the road-bed after the accident, is not sufficient to authorize a verdict of guilty of negligence in the management of a given train in an action brought to recover for the killing of horses, through the alleged negligence of a railroad company.

3. Evidence going to show that such train was going at a high rate of speed does not necessarily import negligence.

4. Where it is contended that animals were injured through failure to

properly fence, the pivotal point is, as to the condition of the fence where they went upon the track.    There can be no recovery if such place was properly fenced.

5.    This court holds as proper the admission of evidence in the case presented, touching the condition of a fence at places other than where the horses in question went upon the track, the same being insufficient to turn hogs.

6.    An instruction not based upon evidence adduced should be refused.

[Opinion filed February 26, 1892.]

APPEAL from the Circuit Court of Jasper County; the Hon. C. C. BOGGS, Judge, presiding.

An action was brought by A. F. Aten for killing stock, and another action of the same nature was brought by John F. Aten. Several counts of each declaration allege the killing of hogs, while other counts allege the killing of one horse belonging to A. F. Aten, and the killing of three horses belonging to John F. Aten. The horses were killed at about the same time, and on trial it was stipulated by the parties that both causes should be tried together and the jury find separate verdicts, and that both causes might be heard in the Appellate Court on one record, and that the decision of the Appellate Court might apply to both cases, the evidence being the same except as to damage for killing hogs. The field from which the horses escaped was on the east side of, and separated from, the right of way by a fine wire fence of the kind in common use. It had been constructed several years before and was in good condition for all kinds of stock at the time of this accident, except at two places; one, where a ditch passed under it, and the other, where, by the washing out of the bank of a creek, which extended along between the fence and railroad track, eight or ten posts had dropped down and were standing upright in line against the bank, then eight feet high. At the former place it was about three feet from the lower wire to the bottom of the ditch; at the latter place, the fence was standing upright, and held in place by the wires. The adjoining field had been used as a stock pasture for three weeks prior to the time in question, during which the mares

ran there every nice night, and the colts all the time. The two defects mentioned had existed for about eight years, during which a horse had not been known to escape through them; seven or eight years ago a farm crossing was put in, and a gate built in the fence connecting the pasture with the right of way. The planks in the crossing were subsequently removed, but the gate remained. A year before the accident a new gate was substituted, and was in good repair at the time the horses were killed. It was a sliding gate of the construction in general use on farms, with the same fastenings and as complete as any other gate of that pattern.

In the evening of December 27, 1889, J. F. Aten turned the horses into this pasture by a gate opening from the public highway. The gate in the right of way fence was then closed. Other witnesses saw the gate closed at about the same time. Between ten and eleven o'clock of the same evening William Pippin, in passing through there, found the gate open and setting around into the field about four feet. He left it as found. The horses escaped to the railroad track, and between twelve and one o'clock of the same night were struck and killed, or injured, by the north bound freight of defendant. The next morning John F. Aten found the horses lying along the right of way, and the gate open as described by Pippin. An examination of the ground was made by different witnesses for the purpose of determining how the horses got upon the track, but no marks or indications of any kind whatsoever could be found, except at the open gate, where many horse tracks were discovered. The declarations charge negligence in not constructing and keeping in repair sufficient fences or sufficient gates at farm crossings, and negligence in the operation of the train. There were one or more horses on the right of way which were not struck by the train, and the evidence shows that tracks of horses, running, were found on the road-bed, but what horses made the tracks is not shown, nor whether more than one horse was running. The engineer testifies that when he first discovered the horses they were about at the road crossing at the gate, and when he first saw them could not tell what it was; did not know but that it was

a man; when he got nearer saw what it was, and called for brakes. "As I came nearer I noticed more than one horse and pulled the engine over on its end, reversing the engine and using the steam the opposite way; used sand to keep the engine from slipping; did not know how many horses were struck; did not see any horse running ahead of the engine before they were struck; when I saw this horse, she was standing across the track; don't know whether I struck her or not; she passed out of my sight; saw another one about the same time. When I got through with these two, another one ran upon the other side of the track ahead of the engine; that was after seeing the first two, and pretty close to the crossing. The last horse jumped on the track by the time I got there. I could not have kept a better lookout as we went north if I had forty eyes; didn't see the horse until it jumped on the track ahead of the engine; when she jumped on the track, we were close enough to frighten her, but she got off; she was headed right across the track; that was the first time I saw the horses. There was nothing I could have done that I did not do to stop the train."

While the engineer testified that he sounded the whistle, witnesses for the plaintiff testify that no bell was rung nor whistle sounded. Verdict and judgment was rendered for the plaintiffs on all the counts of the declarations.

Messrs. GIBSON & JOHNSON and STEVENS & HORTON, for appellant.

Plaintiffs were bound to prove by a preponderance of the evidence that the defendant was guilty of negligence in running its train. T. H. & I. R. R. Co. v. Tuterwiler, 16 Ill. App. 197; R., R. I. & St. L. R. R. Co. v. Connell, 67 Ill. 216; I. C. R. R. Co. v. Bull, 72 Ill. 537; P. D. & E. Co. v. Duggan, 10 Ill. App. 233.

The testimony that tracks were discovered extending along the railroad for some distance south of where the horses were found, without proof that the horses were running ahead of the engine when the tracks were made, and that the engineer could have seen them so running, is no proof at all. R. R. I. & St. L. R. R. Co. v. Connell, 67 Ill. 216.

Plaintiffs' case is not supported by the statement of witness (Lyda) that the train was running fast.   T., W. & W. Ry. Co. v. Barlow, 71 Ill. 640; W., St. L. & P. Ry. Co. v. Neikirk, 13 Ill. App. 387.

Nor by testimony that the train gave no signals that night for a considerable distance.   T. W. & W. Ry. Co. v. Barlow, 71 Ill. 640.

Since, if such facts were established, it did not appear that the damages resulted therefrom, and they were not material to the issues.   T. H. & I. Co. v. Jenuine, 16 Ill. App. 209; St. L. V. & T. H. R. R. Co. v. Hurst, 25 Ill. App. 181.

The plaintiffs failed to establish, by a preponderance of the evidence, that the horses got upon the track because of a defective fence or gate, which they were bound to do to warrant the finding of the jury against the defendant on that issue. Wabash Ry. Co. v. Brown, 2 Ill. App. 516; C., B. & Q. R. R. Co. v. Farrelly, 3 Ill. App. 60; G. W. R. R. Co. v. Morthland, 30 Ill. 451.

The defendant performed its duty in constructing a gate of the kind in general use.   C. & A. R. R. Co. v. Buck, 14 Ill. App. 394.

Even if the gate had been defective, defendant was not liable, since the horses did not get upon the track because of the defects, but because some one left the gate open during the night.   I. C. R. R. Co. v. McKee, 43 Ill. 119; T. H. & I. R. R. Co. v. Tuterwiler, 16 Ill. App. 197.

Under the evidence, the horses escaped to the right of way through a gate left open during the night, which, in any view, was a casual breach for which defendant was not liable. C. & N. W. R. R. Co. v. Barrie, 55 Ill. 226; C., B. & Q. R. R. Co. v. Sierer, 13 Ill. App. 261; I. & St. L. R. R. Co. v. Hall, 88 Ill. 368.

The court erred in admitting evidence upon the following points:

1.   Of the condition of the fence at places other than where the horses got upon the track.   C., B. & Q. R. R. Co. v. Farrelly, 3 Ill. App. 60.

2.   Of the conversations between plaintiff and the section

foreman, and of notice given to him in reference to farm crossing.   C., B. & Q. R. R. Co. v. Kennedy, 22 Ill. App. 314.

3.   Of the failure to give signals at other places, or highway crossings.   W., St. L. & P. Co. v. Neikirk, 13 Ill. App. 387; C. & E. I. R. R. Co. v. McKnight, 16 Ill. App. 596.

It was error to instruct the jury that plaintiff could recover, if defendant's servants were negligent, without limiting it to acts or omissions charged in the declaration.   W., St. L. & P. Ry. Co. v. Coble, 113 Ill. 115; C. & A. R. R. Co. v. Bragonier, 119 Ill. 51; St. L., A. & T. H. R. R. Co. v. Berger, 9 Ill. App. 341; Kranz v. Thieben, 15 Ill. App. 483.

Especially without proof that injury resulted therefrom. St. L., V. & T. H. R. R. Co. v. Hurst, 25 Ill. App. 181.

The court erred in assuming defendant's negligence in the ninth instruction.   I. C. R. R. Co. v. Zang, 10 Ill. App. 594.

The instructions for plaintiff on the insufficiency of the fence and gate were erroneous, because there was no evidence that the horses escaped by reason thereof.   St. L., V. & T. H. R. R. Co. v. Hurst, 25 Ill. App. 181; Wenger v. Calder, 78 Ill. 275; C., B. & Q. Ry. Co. v. Morkenstein, 24 Ill. App. 128.

They should have been modified to cover the fact that the horses got through an open gate.   W., St. L. & P. Ry. Co. v. Rector, 104 Ill. 296; C., B. & Q. Ry. Co. v. Seirer, 60 Ill. 295; C., B. & Q. Ry. Co. v. Magee, 60 Ill. 529.

Messrs. FITHIAN & JACK, for appellees.

"A railroad company in running its trains is liable for the killing of stock which gets upon the track, not only when the killing of such stock results from the gross or wilful negligence of the company or of its servants running the train, but also when it results from the want of ordinary care."   Illinois Central Railroad Co. v. Middlesworth, 46 Ill. 494.

"Negligence is the opposite of due care and prudence.   It is the omission to use the means reasonably necessary to avoid injury to others, and is not a legal question, but one of fact, to be proved like any other question."   C. & A. R. R. Co. v. Pennell, 94 Ill. 448.

"In suits to recover damages caused by negligence, the question of the plaintiff's negligence in failing to use proper care, and the degree of negligence in either party, is usually, if not always, a question of fact for the jury." I. & St. L. R. R. Co. v. Evans, 88 Ill. 63.

"In an action against a railroad company to recover the value of cattle alleged to have been killed on defendant's road by their locomotive and train, it appeared that the cattle could have been seen on the track by the engineer, if he had been on the lookout, for a distance of more than half a mile; there was nothing to obstruct his view, and yet, with the stock standing on the track in full view, the engineer made no effort to avoid the danger, and never slackened the speed of train, but rushed on at a rapid rate, without any signal to give the alarm; held, it was gross negligence on the part of the engineer not to stop the train in time to avoid the danger, for which the company should be held responsible, even though the cattle were upon the track without the fault of the company." C. & N. W. R. R. Co. v. Barrie, 55 Ill. 226; R. R. I. & St. L. R. R. Co. v. Irish, 72 Ill. 404.

The case of the R. R. I. & St. L. R. R. Co. v. Connell, cited by counsel, is not applicable to this case. The right of way was not inclosed but open to the common. The evidence failed to show what train killed the mule; whether the accident occurred in daylight or at night. The evidence in this case shows the train that killed the horses, the time of the killing, and that the tracks on the road-bed were made by these horses while fleeing from the train. The right of way is inclosed. No other horses had been on the right of way or could have got on it. The tracks indicate clearly that the horses had been running and are continuous to the first horses struck and continuous from the first horses around the bridge back onto the road-bed to where the dun mare was knocked off of the track, and just at this point they fail to be continuous.

"It is the peculiar province of the jury to pass upon the credibility of the several witnesses," and "where the evidence as to the disputed facts of a case is contradictory, it is for the jury to determine which side is most worthy of belief,

and their finding in such a case must settle the controverted facts." Conn. M. L. Ins. Co. v. Ellis, 89 Ill. 516; Rogers v. The People, 98 Ill. 581; Morgan v. Ryerson, 20 Ill. 343; Creote v. Willey, 83 Ill. 444; P. D. & E. R. W. Co. v. Babbs, 23 Ill. App. 454; I. & St. L. R. R. Co. v. Evans, 88 Ill. 63.

"Where the evidence, on the trial of an action against a railroad company for killing a colt, tended to show that the colt ran on the track in front of an advancing train, before it was struck and killed, for a distance of twenty-five or thirty rods, and the track was straight, so that the engine driver, by the exercise of reasonable diligence, could have discovered it in time to have slackened the speed of the train so as to have avoided the accident, a verdict finding the company liable for the value of the colt may be properly found, notwithstanding the evidence is conflicting." P. & D. R. R. Co. v. Mullins, 66 Ill. 526.

PHILLIPS, P. J. From the facts appearing in this record there is not a preponderance of evidence showing the defendant guilty of negligence in the management of its train, even if the bell was not rung or the whistle sounded as required by the statute. No recovery could be had for that cause unless it was made to appear by facts and circumstances preponderating, that the accident was the result of such neglect. Quincy, Alton & St. Louis R. R. Co. v. Wellhoener, 72 Ill. 60; Terre Haute & Indianapolis R. R. Co. v. Tuterwiler, 16 Ill. App. 197.

The evidence that tracks of a horse or horses, apparently running, were seen on the road-bed, is not evidence sufficient to authorize a verdict of guilty of negligence in the management of the train.

In the case of the Rockford, Rock Island & St. Louis R. R. Co. v. Connell, 67 Ill. 216, it was said : " The manner of the killing is not described by any witness. The only facts relied on to charge the company, other than the killing itself, are that tracks supposed to have been made by the mule were discovered on the road-bed for a distance of a hundred and fifty yards from where it was struck, and leading in the

same direction, and the tracks indicated the mule had been running. The evidence affords no explanation as to when the tracks were made, whether as this train was advancing, or at a time anterior. There is not a fact or circumstance proven that shows or even tends to show the engineer saw, or by the exercise of reasonable diligence could have seen the mule in time to stop or even slacken the speed of the train so as to have avoided the accident.".

What is said in that case is applicable to the evidence in this; what horse made the tracks, whether the black horse that escaped injury or those killed, is not shown. The time the tracks were made is not shown, nor that the engineer, by the use of reasonable diligence, could have avoided the accident. The case of Chicago & N. W. R. R. Co. v. Barrie, 55 Ill. 227, is not an authority in point; there it was proven the cattle on the tracks were seen or could have been seen by the engineer in time to have avoided the injury. This record contains no such evidence. Nor would the fact that the train was running at a high rate of speed be evidence of negligence. Toledo, Wabash & Western R. R. Co. v. Barlow, 71 Ill. 640; Wabash, St. Louis & Pacific Ry. Co. v. Kirk, 13 Ill. App. 387. . The evidence shows that the road was fenced and the injury occurred at a place where it was the duty of the company to fence the road; but it is insisted by the plaintiff that the fence and gate were not sufficient to turn stock. The primary question and the precise fact to be considered is, as to where the horses went upon the right of way. Great Western Railroad Co. v. Hanks, 36 Ill. 284; T., P. & W. Ry. Co. v. Darst, 51 Ill. 365; Alsop v. O. & M. Ry. Co., 19 Ill. App. 292.

At no place where the evidence shows the fence to have been out of repair, is it shown that the horses passed onto the right of way, and the witnesses state if they had passed down the bank, along the ravine and under the wire, it would have been evidenced by the tracks of the horses, and at no place where the horses could have passed on the right of way were tracks found, except at the gate; that the conclusion is irresistible, that it was at that place the horses went upon the right of way. The gate was of a kind in general use and

was in good repair and fastened in the manner that kind of a gate is usually fastened. It was closed when the horses were put in the field, and from the evidence it is apparent it was left open by some person passing during the evening. No negligence of the company is shown with reference to the closing and manner of fastening the gate, and it being casually left open during the night, because of which the horses escaped on the right of way, is not negligence on the part of the company that would authorize a recovery. C. & N. W. R. R. Co. v. Barrie, *supra;* I. & St. L. R. R. Co. v. Hall, 88 Ill. 368; C., B. & Q. R. R. Co. v. Sierer, 13 Ill. App. 261.

And however the question may be as to the sufficiency of the fence and its condition of repair, the horses did not get upon the track by reason of any defects of the fence; and the condition of the fence could not give the plaintiff a right to recover for the horses. I. C. R. R. Co. v. McKee, 43 Ill. 119; T., H. & I. R. R. Co. v. Tuterwiler, *supra.* It is insisted that the court erred in allowing evidence as to the condition of the fence at places other than where the horses got upon the track. While that is the material question with reference to the right of recovery for the horses (C., B. & Q. R. R. Co. v. Farrelly, 3 Ill. App. 60), still the counts of the declaration which charged the killing of hogs at other times, authorized the admission of evidence as to the condition of the fence at places other than where the horses went on the track, the condition of the fence being insufficient to turn hogs; the recovery on the counts for killing the hogs was proper. The second instruction given for the plaintiff is: "The jury are instructed, as a matter of law, that if a railroad company or its servants fail to perform a duty prescribed by statute, such failure is negligence of itself, provided it is the proximate cause of any injury to the person or property of another." No person saw the injury unless it be the engineer, and he testified he sounded the whistle, and there is not a particle of evidence showing the injury resulted from the omission to sound the whistle or ring the bell, and the jury could not have understood this instruction as pertaining to anything other than an omission to ring the bell or sound the whistle; hence there

was no evidence on which to base that instruction. Objection is made to certain other instructions for plaintiff which would be well taken if nothing was involved but the horses; yet, as other stock was killed at other times, the exceptions to other instructions are not well taken. For the errors indicated the judgment is reversed and the cause remanded.

*Reversed and remanded.*