## THE MACON AND AUGUSTA RAILROAD *vs.* NEWELL.

Where it was shown that a mule was killed by the running of the engine and cars of a railroad company, this raised a presumption of negligence on the part of the defendant; but where this presumption was fully rebutted by the testimony on behalf of the company, to the effect that the injury was not the result of negligence on the part of the defendant, or its agents, but that it used all ordinary and reasonable care and diligence to prevent the injury, and where this was not contradicted by any other evidence, a new trial should have been granted, on the ground that the verdict was without evidence to support it.

Judgment reversed.

March 17, 1885.

BLANDFORD, Justice.

[Newell brought suit against the Macon and Augusta Railroad for the killing of a mule by its train. Plaintiff showed that the mule was so killed; that its tracks showed that it had run, and that it was about one hundred yards from where it got on the track to where it was killed, that the track was not fenced at that point; that it was pretty straight there; and that from where the mule was lying to a curve was about three hundred yards. The value of the mule was proved to be $150.00.

The engineer of the defendant swore, in substance, as follows: Am engineer on Georgia Railroad. I was going to Macon; it was a mixed train. Don't recollect number of cars; had three or four extra cars; nothing unusual in train; was on schedule time. It was beyond Jarnett's crossing; had passed Milledgeville. It was raining very hard. Had head out of cab. Saw obstruction on track; reversed, blew on brakes and stopped. Saw it was a mule; had lights on and train in good condition. Mule was, I think, not more than thirty yards from me; he came from fireman's side of track. I did everything in power of man to do to stop. First blew on brakes; reversed and pulled engine open and blew whistle; pulling her open

means to reverse and giving steam to make train go backward. It was 60 or 70 yards beyond crossing. I blew at the whistle-post. It was down grade. Windows in front were closed to keep me from getting wet; it was raining. It is usual in stormy weather to close front windows. I was looking out of side window and looking forward; there was no lack of vigilance on my part, I do not think.

*Cross-examination :* I am engineer in employ of road. Have testified before in this case. I was entering the straight line; had just come around a curve; do not know exact distance. It was raining; it was the four o'clock train; it was a cold rain. The mule, I think, was thirty yards ahead when I first saw it; it did not run; I do not know that it moved Had a good head-light. I think there is a little embankment there. With a good head-light, on a dark night and with no rain, can discern an object 90 or 95 yard . I do not think I would run over 100 yards before stopping a train dead still; had hard brakes on. Was due at Milledgeville about 4 o'clock A. M. Do not recollect; do not think I was running over 16 or 17 miles per hour; think schedule was about 16 miles; left Milledgeville on schedule time. I had my head out pretty much all the while at side window. I had my head out all the while down hill, as I had blown at crossing. Cannot tell how long had head out when I saw mule. Do not know how far I ran after I struck the mule; I stopped; suppose I went seventy or one hundred yards. Did not go and see mule; have never seen it.

*Re-direct :* The front window is a frame with a glass over it. Can see through it perfectly well in good weather. I have run on an engine nearly fifteen years. The darker the night, with the mist over the glass, the harder to see with head-light. A real dark night (clear), will throw light one hundred yards; a misty or foggy night, can see an obstruction forty or fifty yards, but cannot tell what it is; could not have seen over thirty yards ahead that night.

He was corroborated as to the nature of the train, the

schedule and the putting on of brakes, by the testimony of the conductor.

The jury found for the plaintiff $150.00. Defendant moved for a new trial, on the ground that the verdict was contrary to law and evidence.

The motion was overruled, and defendant excepted.]