(126 N. W. 239.)

---

W.  W.  CORBETT  v.  GREAT  NORTHERN  RAILWAY  COMPANY,
A  CORPORATION.

Opinion filed February 10, 1910.

Rehearing denied April 13, 1910.

**Railroads — Injury to Animals — Contributory Negligence.**

1.  Plaintiff's horses were killed by a railway train of defendant, after escaping from a yard inclosed by a fence consisting, on one side, of only one wire, and located in close proximity to defendant's

track. Defendant pleaded that leaving the horses in the yard so fenced, in close proximity to the track, constituted contributory negligence, and the court charged the jury that this did not constitute contributory negligence. *Held,* error.

### Railroads — Injury to Animals — Evidence Confined to Negligence Alleged.

2. The plaintiff was inquired of on direct examination as to the condition of the right of way with reference to snow and other things lying there. Objection was made, on the ground, among others, that it was not within the issues; the action having been brought for negligence in the running of the train, and not in the maintenance of the right of way. The objection was overruled. *Held,* for reason stated in objections and under circumstances of this case, error.

### Evidence — Cure by Striking Out.

3. In answer to the question above stated, the witness testified that oats were sprinkled upon the track. Upon appellant's motion this answer was stricken out, and the jury cautioned not to consider the same. No reference was made to it in the court's charge. In view of the evident purpose of the question and answer and issues as framed in the pleadings, it is *held* that striking out the answer did not cure the error, although this court is not prepared to say that it was reversible error. Trial courts should, as far as possible, abandon the prevailing practice of admitting improper evidence and relying upon curing the error by subsequently striking it out.

### Instructions — Evidence.

4. A charge which may lead the jury to believe that the defendant must make out its defense conclusively, or by undisputed evidence is reversible error.

### Railroads — Negligence — Evidence — Presumptions.

5. Section 4297, Rev. Codes 1905, provides that killing or damaging any horses, cattle or other stock by the cars or locomotives along a railroad shall be prima facie evidence of carelessness and negligence on the part of the corporation. In an action for killing or injuring stock, proof of ownership, killing or damaging, and its value, makes a prima facie case; but when the plaintiff relies solely upon the statutory presumption of negligence, and the testimony of those in charge of the running of the train is unequivocal that everything was done that could be done, after the discovery of the stock upon the track, to prevent its injury, and that the train was properly equipped and all appliances in good order, and no conflicting evidence is offered as to material questions, and the circumstances are not in conflict with such evidence, the prima facie case made under the statute is overcome, and the defendant is entitled on proper motion, to a directed verdict.

**Railroads — Negligence — Evidence — Statutory Presumption.**

6. Whether the statutory presumption has been fully met and overcome is in the first instance a question of law.

**Animals — Running at Large — Open Season — Duty of Owners as to Railroad Right of Way.**

7. Under section 1933, Rev. Codes 1905, it is lawful for certain stock to run at large between the 1st day of November and the 1st day of April, except in counties where the electors vote otherwise. *Held,* the object of the statute permitting stock to run at large during the months named is to permit it to feed upon commons and unfenced lands without liability of owners for damages done on such lands, and not to impose upon the owners of such premises any greater degree of care for or towards such stock than is required at other seasons of the year.

**Trespassing Animals — Running at Large — Negligence of Owner of Premises.**

8. The statute quoted only affects the remedy · or measure of damages in case of injury by such animals, and as applicable to acts of negligence by the owner of the premises onto which stock strays during the open season such stock is trespassing.

**Railroads — Animals on Track — Duty of Railway Company.**

9. Following the previous decisions of this court, it is *held* that as to trespassing stock the duty of the railway company and its servants is to use ordinary care not to injure it after its discovery upon the track or right of way.

**Decision Distinguished.**

10. Ely v. Rosholt, 11 N. D. 559, 93 N. W. 864, distinguished.

Appeal from District Court, Williams County; *Goss, J.*

Action by W. W. Corbett against the Great Northern Railway Company. Verdict for plaintiff, and from an order denying a new trial, defendant appeals.

Reversed, and new trial granted.

*C. J. Murphy* and *Arthur Le Sueur,* for Appellant.

Statutory presumption is to bring in proofs in possession of railway company, and when overcome by proof, burden is on plaintiff to establish his case without aid of such presumption. Hodgins v. M., St. P. & S. Ste. M. R. R. Co., 3 N. D. 382, 56 N. W. 139; Smith v. Northern Pac. Ry. Co., 3 N. D. 17, 53 N. W. 173; Cumming v. G. N· Ry. Co., 15 N. D. 611, 108 N. W. 798. Whether the presumption is overcome is a question for the court. Spaulding v. Railroad Co., 30 Wis. 110, 33 Wis. 582; Volklman v. R. R. Co., 5

Dak. 69; Huber v. R. R. Co., 6 Dak. 392.    Railroad company must use ordinary care after discovering danger to stock.    Bostwick v. Minn. & P. R. R. Co., 51 N. W. 781; Hodgins v. Soo Ry. Co. supra.

H. B. Doughty and A. L. Knauf, for Respondent.

SPALDING, J.   This is an action for damages for the negligentt killing of two horses and injuring two other horses so they had to be killed, belonging to respondent, by one of appellant's railway trains on the 12th day of March, 1907.   The defendant denied the allegations of the commplaint, and alleged that if the stock was killed by appellant's train, the killing was caused by the negligence of the plaintiff in permitting it to run at large and go upon the right of way and tracks of defendant.   The case was tried before a jury, and the plaintiff submitted evidence of ownership, the killing by one of defendant's freight trains, and the value.   The plaintiff himself testified that he did not allow the horses to run at large intentionally at any time, and, as we understand his testimony, showed that his pasture was on one side of the railway track, and within 50 yards of it; that on the other side of the track he had a shed for his horses and a yard, and that he allowed them to run loose in the yard nights, and that they were free to remain in the yard or go into the shed.   He testified that around this yard was a two-wire fence, except on the south side where there was only one wire. The wire was about four feet from the ground, and about three feet above the top of the snow.   He testified that they had escaped from the yard once before during the six weeks he had kept them there.   The injury and killing were also shown, and witnesses testified as to the hour of the day the accident occurred.   This is the substance of the evidence as far as material to our present consideration at the time plaintiff rested his case.   The appellant submitted a motion to instruct the jury to reurn a verdict in its favor, upon the grounds that plaintiff had not made out a case, and that the proof showed contributory negligence, in that the plaintiff kept or maintained no sufficient or proper inclosure for stock, which was allowed to run in close proximity to the track of the defendant. The court denied this motion, and an exception was duly taken. We shall consider the assignment of error based on this ruling in connection with the instructions of the court to the jury.

The defendant then submitted the testimony of the engineer who had charge of the locomotive at the time the accident occurred. He testified that he was 30 years of age, had been an engineer 2 years

and 5 months, and was a fireman 4 years before that; that he was familiar with what was necessary to do in cases of the kind; that under the circumstances everything was done that could have been done that would have tended in any way to prevent the accident to the horses; that everything about the engine was in good working order and in good repair; that he saw the stock at the very earliest possible moment that he could have seen it; that the track over which he had come was down grade into Buford, where the accident occurred; that it was not downgrade at the exact spot where it occurred, but that the downgrade extended to a point about 40 car lengths before he reached the place of the accident; that when he first saw the horses he was too close to do anything to prevent the accident; that he whistled and tried to scare them off the track; that that was the only thing he could do; that the application of the air brakes or anything of that kind would have been futile, and could not have prevented his striking the stock; and that by reason of this fact he made no effort to stop the train. He first testified that he struck the stock at 5:25 in the morning, but subsequently changed it to 6:25; that in the daytime there was nothing to obstruct one's view going downhill into Buford for about half a mile from a curve in the track to the depot; that he struck the stock about 10 car lengths from the depot and about four or five car lengths after he first saw it. He also stated that all the appliances that are used for stopping a train that are usually on an engine were on the engine he was running, and in good working order, and that had there been time to stop, there was nothing to prevent his stopping, and that the only reason he did not stop was because he did not see the horses soon enough; that from the time he saw them until he struck them was only an instant, so short a time that he could hardly measure it. The plaintiff offered some evidence in rebuttal, but it in no way conflicted with the testimony of the engineer, except as to the degree of darkness prevailing when the accident occurred. No evidence was offerd by plaintiff to show actual negligence. He relied on the presumptoin created by the statute. After the evidence was all submitted the defendant moved the court to direct a verdict in its favor on the ground of contributory negligence and failure of proof, which was denied. The court instructed the jury, and it returned a verdict in favor of the plaintiff, assessing his damages at $600.

Twenty-four errors are assigned by the appellant. Many of them are technical and go merely to the order of proof and are without merit. Others need not be considered, as they go to the main assignments of error. The plaintiff was asked on redirect examination the following question: "Q. At the place where you tracked them on the right of way of the Great Northern Railway, what was the condition of the right of way with reference to snow and other things lying there?" This was objected to as immaterial, and not within the issues. The objection was overruled, and the witness answered that the track was covered with a free skift of snow between the rails. That the train had gone by, and the oats that were sprinkled upon the track were covered with snow, except where the horses had pawed them out. Appellant moved to strike out the answer on the grounds urged in the objection, and that it was immaterial and related to matters not specified in the complaint and not within the issues. Whereupon the court granted the motion so far as it related to the oats and statements relative thereto, and cautioned the jury not to consider the same. No reference was made to this testimony in the charge. The evident purpose of this question was to bring matters to the attention of the jury prejudicial to the defendant, and not covered by the complaint, and to lead the jury to infer that the railway company had negligently permitted oats to remain upon its right of way, thus attracting stock which might be in the neighborhood to the track and causing it to remain there. The charge in the complaint was the negligent running of the train, not the condition of the track or negligently strewing oats on the track, even if they were scattered there by the railway company. We are of the opinion that the admission of this evidence constituted error. It may not alone be sufficient to warrant granting a new trial. We call attention to it for the purpose of suggesting that trial courts are much too liberal in permitting witnesses to answer improper questions, and then relying on developments in the progress of the trial to determine whether such questions should have been permitted. In this manner evidence is got before the jurors which they have no right to consider, and the subsequent striking it out and a caution against considering it never effaces it from their memory. The experience of the members of this court in reading evidence in those actions which we are required to try de novo justifies us in saying that even those trained in the legal profession find it extremely difficult to over-

look and not be influenced by incompetent and irrelevant testimony which they are compelled to read, although they know it should not be considered. Much less can laymen, serving as jurors, obliterate such evidence from their memories and give it no consideration. It is much easier, when it is subsequently found that the question is proper, to permit its reception than to attempt to remedy its improper reception by later striking out the answer. It is a practice which should be, as far as possible, abandoned.

The court charged the jury that there was no contributory negligence in the case, and that the plaintiff was without fault in the management of his stock at the time of the killing, as shown by the uncontroverted evidence in the case. In this there was prejudicial error. The best that can be said of plaintiff's position and in support of his contention is that minds of reasonable men might disagree as to whether permitting horses to remain loose overnight in a yard 50 yards from defendant's track, with only one wire as a fence on one side of the yard, and that only three feet above the snow, was negligence on the part of the plaintiff, and that the question should have gone to the jury. Carr v. M. St. P. & St. Ste. M. Ry. Co., 16 N. D. 217, 112 N. W. 892.

The court charged the jury that, where the defendant shows conclusively, by undisputed evidence, that it was at the time of the injury operating the train in question by its servants or agents in a careful manner, and that it was properly equipped with all the modern and usual appliances, that if they did not find that the employes were, under a fair preponderance of all the evidence guilty of some act of carelessness which resulted in the killing of the stock, then it should find for the defendant. This instruction was such as to convey to the jury the impression that to overcome the presumption of negligence raised by the statute the burden was on the railway company to make a showing that was impossible for any one to rebut. It required defendant to show conclusively, by undisputed evidence, that it was not in fault. This is not the rule of law, and so charging is reversible error.

A motion for a new trial was denied. This and the denial of defendant's motion to direct a verdict in its behalf at the close of the evidence was error. The plaintiff submitted no evidence whatever, before resting his case, having any tendency to show actual negligence on the part of the defendant, but relied solely upon the prima facie case made under the statute by proving the ownership,

killing and value. Section 4297, Rev. Codes 1905, provides that killing or damaging of any horses, cattle, or other stock by the cars or locomotives along a railroad shall be prima facie evidence of carelessness and negligence on the part of the corporation. The intent in enacting this statute was to bring into court those who have knowledge of the facts and compel them to produce such proof as they possess. Generally the corporation operating a railway train and its employes possess the only information relating to negligence in operating the train, and this is why the burden is taken from the plaintiff after proving the ownership and killing and placed upon the defendant; but, when the plaintiff relies solely upon the prirma facie case made under the statute, less is required to rebut the prima facie case than would be necessary to rebut his evidence if the plaintiff relied upon actual proof of negligence, and when a prima facie case has been met by evidence which is not in conflict with material evidence, or with the circumstances surrounding the injury or killing, the presumption arising under the statute is eliminated, and it becomes incumbent upon the plaintiff to show actual negligence by a fair preponderance of evidence. Whether such presumption has been fully met and overcome by the defendant's evidence is, in the first instance, a question of law. Hodgens v. M. St. P. & S. S. M. Ry. Co., 3 N. D. 382, 56 N. W. 139; Smith v. N. P. Ry. Co., 3 N. D. 17, 53 N. W. 173; Duncan v. G. N. Ry. Co., 17 N. D. 610, 118 N. W. 826. One of the animals hit by defendant's train in the present instance was a stallion. Under the provisions of section 1933, Rev. Codes 1905, stallions are not permitted to run at large at any season of the year. It follows that this stallion was trespassing. Under the rule in Wright v. M., St. P. & S. S. M. Ry. Co., 12 N. D. 159, 96 N. W. 324, the measure of defendant's duty was to exercise ordinary care not to injure it after it was discovered to be in a place of danger, and defendant was not required to keep a lookout for trespassing stock. See, also, Locke v. Ry. Co., 15 Minn. 350 (Gil 283); Palmer v. N. P. Ry. Co., 37 Minn. 223, 33 N. W. 707, 5 Am. St. Rep. 839; Harrison v. Ry. Co., 6 S. D. 100, 60 N. W. 405. Under section 1933, supra, it was lawful for the other injured animals to run at large when this accident occurred.

The only conflict in the testimony related to the degree of darkness when the accident occurred. Some of defendant's witnesses testified that it was daylight, while others testified that it was not clear daylight. The engineer testified that it was dark and cloudy,

but not as dark as in the night-time. This conflict is immaterial if the defendant owed no greater duty toward the stock which had a right to run at large than it did toward the stallion. The cases heretofore decided by this court have arisen over injuries to animals during the closed season. They are then clearly trespassers. But it is contended that the provisions of section 1933, supra, making it lawful for cattle, horses, mules, etc., to run at large from the 1st day of December to the 1st day of April in each year, with certain exceptions, is in effect a license to owners to permit them to run at large upon the right of way and track of railway companies, thereby endangering the lives of passengers and trainmen and the safety of trains and freight, and that the duty of the company in such case is to use reasonable care to prevent the infliction of injury upon stock upon its right of way at all times after it becomes possible, by reasons of the nature of the track, the light, and other surrounding circumstances, to discover such animals; in other words, that it is the duty of the defendant to maintain a constant and uninterrupted lookout for animals upon its track, and that the failure to observe such animals, where there is no obstruction to the view, in time to stop the train and prevent the accident, is negligence in such a degree as to make the defendant liable. Respondent argues his case upon the theory that his rights were the same as though the horses had been running at large, and it was evidently tried upon that theory, so we assume for the purposes of this case that his rights were those of an owner who had permitted his stock to range during the open season. The evidence in which the slight conflict to which we have called attention arises is only material in case it is held that the railway company must keep a constant lookout during the open season. We are of the opinion that it is immaterial whether an accident occurs during the open or closed season; that, for the purpose of determining the liability of the railway company, animals upon its tracks are trespassing whether they are there during the open or closed season. The railway company owns its right of way. The Legislature cannot deprive it of its right to the exclusive occupancy of its own property, except at crossings, depot grounds, and like places; neither can it relieve it from liability for actual negligence, nor impose penalties upon it for negligence when it is not negligent. The object of the statute permitting stock to run at large during the months named is to permit it to feed upon commons and unoccupied lands,

and to relieve the owners of liability for injury by the stock if it strays upon the occupied and unfenced premises of others, and not to relieve the owners of premises where they are trespassing from liability for inflicting injuries on them while upon their premises. Addington et al. v. Canfield et al., 11 Okla. 204, 66 Pac. 355. If the owner of the premises is not relieved from liability, we see no reason why new liabilities should be imposed upon him, or why he should be held to a greater degree of care during the open season than at any other season of the year. This ought to be particularly true with reference to railways because they are not required to fence their tracks except under certain circumstances, and it would be an unwarranted hardship to require them to maintain a constant lookout for stock upon the track. The other imperative duties of the engineer and fireman render it impossible to maintain a constant lookout. The owner of the stock is the beneficiary of the law permitting it to run at large, and if additional care is imposed by this privilege upon any one, it ought to be cast upon the beneficiary under the law, rather than upon those with whose natural rights it interferes.

The authorities on this subject are not numerous, but the fundamental principles of law governing the right of individuals to the use and occupancy of their own property are controlling. The Legislature of this state has not undertaken to make any distinction between the liability of a railway during the closed and the open season, and the rule having been established as to the duty of the company during the closed season by numerous authorities in which the subject has been carefully considered, we see no reason why the courts should take it upon themselves to make an arbitrary distinction, as they would be doing if they held that a different rule applied during the open season. There is a marked distinction between the duty of railway companies to owners of stock on its track and its duty to passengers on its trains, and much confusion has arisen by failure to note the difference. Undoubtedly the company is required to be much more vigilant in the care of its train while running and in looking out for obstructions on the track for the purpose of insuring the safety of passengers who have submitted themselves to its protection, and who are dependent upon it and its servants for their lives and safety, than for the protection of stock upon its tracks.

In Bileu v. Paisley, 18 Or. 47, 21 Pac. 934, 4. L. R. A. 840, the Oregon Supreme Court, in a well-considered opinion delivered by Chief Justice Thayer, discusses the rule of the common law and of a state where stock is permitted to run at large, and the court, referring to the common law rule that stock may not run at large, uses this language: "The court intimated a doubt as to whether the rule ever did prevail here, but did not determine as to whether it did or not. The grounds upon which the decisions in the other states, which hold that said rule was not in force, are predicated upon its inapplicability to the circumstances and conditions of the people thereof, its being inconsistent with their habits, interests, necessities, and understandings, and its unsuitableness to a new country. These grounds seem to me to be more specious than sound. The rule was not founded on any arbitrary regulation of the common law, but was an incident to the right of property. It is a part of that principle which allows every man the right to enjoy his property free from molestation or interference by others; its is simply the recognition of a natural right. A person owning and occupying land is not vested with the right to enjoy it upon condition that he inclose it by a palisade strong enough to keep his neighbors and their stock from breaking into and destroying the fruits of his labors. Property is not held in civilized communities by so insecure a tenure; but the law surrounds it by an ideal, invisible palladium, more potent than any mechanical paling that can be constructed. The rule in question did not require to be adopted in order to be in force. It always exists where the right of private dominion over things real is recognized. It pertains to ownership. The Legislature, in the exercise of the police power of the state, may, no doubt, require the owners of lands to fence them in a certain manner, and in default thereof to withhold from them a remedy for a trespass committed thereon by animals running at large. In a sparsely populated section of the country, where there are extensive open commons, and stock raising is an important industry, it might be judicious to adopt such a regulation; but to hold that one man has a right to permit his stock to go upon the lands of another, if not protected by a material inclosure, would be holding, in effect, that a man did not own what belonged to him. The Legislature cannot legalize such a trespass. It cannot provide that the cattle of A. may lawfully go upon the land of B. against the latter's consent, whether his land is fenced or unfenced, though it may, as

before suggested, withhold from B. a remedy for damages occasioned by such a trespass, if his land is not inclosed in a prescribed manner. Legislation of the character refererred to goes only to the remedy, and no attempt to extend it further could be justified."

In Williams v. Mich. Cent. R. R. Co., 2 Mich 259, 55 Am. Dec. 59, the Supreme Court of that state, in passing upon a similar question, says: "This act provides merely: 'That no person shall recover for damages done upon lands by beasts, unless in cases where, by the by-laws of the townships, such beasts are prohibited from running at large, except where such lands are inclosed by a fence,' etc. Session Laws 1847, page 181. Thus far this act goes, but no farther, and it cannot be enlarged by implication or intendment. The suit is not brought under this act by the plaintiff to recover damages done on his lands by defendant's beasts; hence the act can have no legal bearing whatever on the case under consideration. This act does not require men to fence their lands, but merely precludes a recovery for damages done by beasts thereon unless they are fenced. Nor does it grant any right to one individual to trespass on the private property of another, or to depasture at will railroads any more than other lands owned and possessed by individual citizens; nor can the legislature, under the constitution, confer any such right. * * * If the plaintiff, under the acts referred to, had no affirmative right to graze his horses on the track of the railroad, it follows that they were there wrongfully, inasmuch as the common law gives him no such right. By way of illustration, suppose that the plaintiff's horses had gone into another man's wheat field, through a gate which had been left open by the owner, and killed themselves eating wheat, could the plaintiff have recovered of the owner of the wheat the value of the horses, under the provisions of the act of 1847? Clearly he could not. The horses would have been in the field without right; hence wrongfully there. Nor could the owner of the wheat, having left his gate open, recover under that act the damage done by the horses. Wheat fields are usually inclosed by fence, and in such a case the act would apply, and legally bar a recovery. * * * Horses in the township of Dearborn being free commoners under some township rule or regulation does not change the effect of this principle of common law, or the vested private rights of the defendants or other individual citi-

zens. The idea that because horses and cattle are free common-ers, they have therefore the lawful right of trespassing on private property is absurd—preposterous in the extreme."

We find several authorities holding the contrary view. In 49 and 54 Federal Reporter are several cases decided by the Circuit Court of Appeals, the opinions having been written by Judge Caldwell, in which the negligence of railway companies in Indian Territory where the laws of Arkansas were in force, was passed upon. Reliance is placed upon several decisions of the Supreme Court of Arkansas as authority for the holding of the Circuit Court of Appeals, but it does not appear that they were based upon any distinction between the open and closed seasons, and it would seem that in Indian Territory no closed season existed, and one of the grounds on which the decisions rest is that the people of Indian Territory were grazing all unoccupied lands before the railways were constructed, and intimating that the railways entered the territory subject to the rights of the inhabitants to graze stock upon lands not belonging to them. In the case at bar, if this reason has any weight, the converse is true because section 1933, supra, was not enacted, and the common-law rule was in force until a time subsequent to the construction of the railroad in question.

In Ely v. Rosholt, 11 N. D. 559, 93 N. W. 864, it was said that animals were not trespassers when on the land of others than the owner during the open season, but that was said with reference to the determination of the right of others to recover damages for injuries done by the stock, and we are of the opinion that it was not intended to, and does not, apply to actions by the owner of the cattle against others for negligence resulting in injuring them. It follows from these observations that the only duty incumbent upon the defendant in the present instance was to use ordinary care to prevent injury after discovering the animals upon the track. The testimony of the engineer is persuasive that he did not discover the animals until too late to stop the train. No conflict is found on this question. The evidence submitted by the defendant completely overcame the presumption arising in plaintiff's favor under the statute cited. Under the rule in the authorities cited, the motion of the defendant, submitted at the close of the case for a directed verdict on the ground that the plaintiff had failed to make out a case, should have been granted. See, also, Memphis, etc., Ry. Co. v. Shoecraft, 53 Ark. 96, 13 S. W. 422;

Huber v. C. M. & St. P. Ry. Co., 6 Dak. 392, 43 N. W. 819 ; Macon & A. R. R. v. Newell, 74 Ga. 809 ; Ky. Cent. Ry. Co. v. Talbot, 78 Ky. 621 ; C., St. L. & N. O. R. Co. v. Paskwood, 59 Miss. 280.

The order denying a new trial is reversed, and a new trial granted. All concur.

ELLSWORTH, J. (concurring specially.) I concur in the result announced, but I cannot agree in the holding that horses, during the "open season" for ranging live stock, are trespassers when upon the right of way of a railway company. A holding the reverse of this is, as I read it, made in the case of Wright v. Minneapolis, etc., Railway Companay, 12 N. D. 159, 96 N. W. 324, and such principle is, I believe, sound and in accord with the current of authority, and should be observed in this case.

I am also unable to agree in the holding that the motion for a directed verdict, made by the defendant at the close of the entire testimony, should have been granted· I believe that the circumstances shown by the testimony with reference to a clear and unobstructed track for a distance of half a mile or more before the stock was struck by the engine, and the fact that it was daylight at the time, so conflict with the testimony of the engineer that he did not see the horses until within a few car lengths of the place where they were struck, and at a distance within which it was impossible to stop the train, as to require the submission of the case to a jury.