# W. W. CORBETT v. GREAT NORTHERN RAILWAY COMPANY.

### (148 N. W. 4.)

**Railroad company — trespassing animals — owes no duty to owners to keep a lookout — discovery of animals on track — duty of engineer — must safeguard lives of himself, crew, and passengers — duty in this respect higher — prudent engineer — collision — speed of train.**

1. A railroad company owes no duty to the owners of animals which are allowed to trespass upon its right of way to keep a lookout therefor, or to take steps to prevent striking them until it has discovered them; nor is it bound to presume that they may be there. Even after such discovery, the duty of the engineer to safeguard the lives of himself and the crew and passengers of his train is higher than his duty to protect the trespassing animals. If, therefore, it would appear to a reasonably prudent engineer, under all of the circumstances of the case, that a collision would be unavoidable, and that it would be safer to continue operating the train at the same rate of speed than to attempt to stop or to slow down the train, such action, and failure to stop or slow down the train, would not constitute a ground of recovery for the owner of the injured stock.

**Negligence — contributory negligence — material conflict in testimony — questions for the jury.**

2. The questions of negligence and of contributory negligence are, where

---

Note.—The question of the duty of railroad employees to keep a lookout for live stock on track is treated in a note in 24 L.R.A.(N.S.) 858. And as to the duty to keep a lookout for horses on highway parallel with track, see note in 33 L.R.A. (N.S.) 128. And upon the duty to give crossing signals for protection of animals, see note in 46 L.R.A.(N.S.) 881.

there is any material conflict in the testimony, questions of fact for the jury, rather than the court, to pass upon.

**Evidence — error — tracks of animals — railway track and right of way.**

3. It is not error, in a case where horses have been run down by an approaching train and the question at issue is whether the action could reasonably have been avoided, to allow one who has shown himself reasonably qualified to testify, to testify concerning the tracks made by the animals in the mud and snow, and that they apparently galloped along said track, even though he cannot and does not testify as to whether the galloping was before or after the accident, the fact that they did gallop and that the tracks were made by the horses being undisputed.

**Engineer — lookout — crossings — cross-examination — duty.**

4. Where one of the questions at issue in a case is whether the engineer actually saw the stock on the track and the exact time at which he saw them, it is not error to question the engineer on cross-examination as to his duty to keep a lookout when approaching crossings.

**New trial — appeal — theory of case — plaintiff — costs.**

5. Where a new trial is granted as a matter of favor to the plaintiff, and is made necessary by the fact that on the former trial and appeal he entertained an incorrect theory of his case, the costs of such former trial should be borne by such plaintiff, even though he is successful on the second trial and on the second appeal.

**Costs improperly taxed — review — terms on. — error.**

6. Where costs are improperly taxed against a party, it is error to impose terms upon him as a condition precedent to obtaining a review of such taxation.

**New trial — cost fee — successful party — former appeal or trial.**

7. The cost fee or charge of $5 which is allowed by ¶ 3 of § 7174, Rev. Codes 1905, "to either party when a new trial shall be had, for all proceedings after the granting of and before such new trial," does not belong to the former trial, nor yet to the former appeal, but to the successful party upon the second trial. Such costs are costs of the new trial or proceedings, and not of the former appeal.

Opinion filed June 4, 1914.

Appeal from the District Court of Williams County, *Fisk*, J.

Action to recover damages for the loss of horses killed upon a railroad track. Judgment for plaintiff. Defendant appeals.

Modified.

*Murphy & Duggan,* for appellant.

The plaintiff has not sustained his burden of proving negligence in the operation of the train by defendant. Corbett v. Great Northern R. Co. 19 N. D. 450, 125 N. W. 1054.

It was only the duty of the engineer to use ordinary care when he discovered the animals on the track; his higher duty was to protect himself, the crew, and passengers on the train. Wright v. Minneapolis, St. P. & S. Ste. M. R. Co. 12 N. D. 159, 96 N. W. 324; McDonell v. Minneapolis, St. P. & S. Ste. M. R. Co. 17 N. D. 606, 118 N. W. 819.

The evidence shows that the engineer could not have stopped the train or prevented the accident after he discovered the animals on the track; every act in an endeavor to do so would have been attended with great danger to himself, crew, and train. It was not his duty to take such risk. Corbett v. Great Northern R. Co. supra; Rattenbury v. Pere Marquette R. Co. 172 Mich. 106, 137 N. W. 679; Hebron v. Chicago, M. & St. P. R. Co. 4 S. D. 538, 57 N. W. 494; Keilbach v. Chicago, M. & St. P. R. Co. 11 S. D. 468, 78 N. W. 951; Harrison v. Chicago, M. & St. P. R. Co. 6 S. D. 100, 60 N. W. 405; Wright v. Minneapolis, St. P. & S. Ste. M. R. Co. 12 N. D. 159, 96 N. W. 324; Miller v. Chicago & N. W. R. Co. 21 S. D. 242, 111 N. W. 553; Hodgins v. Minneapolis, St. P. & S. Ste. M. R. Co. 3 N. D. 382, 56 N. W. 139; Cumming v. Great Northern R. Co. 15 N. D. 611, 108 N. W. 798.

The undisputed evidence of the engineer cannot be arbitrarily rejected and a verdict rendered against it. A verdict rendered in conflict with such evidence is flagrantly against the weight of the evidence. Miller v. Chicago & N. W. R. Co. 21 S. D. 242, 111 N. W. 553; Anderson v. Chicago, R. I. & P. R. Co. 111 Minn. 531, 127 N. W. 455; Atchison, T. & S. F. R. Co. v. Henderson, 27 Okla. 560, 112 Pac. 986.

It is not enough to show that the horses might have been killed through the negligence of the defendant. Gibson v. Iowa C. R. Co. 136 Iowa, 415, 113 N. W. 927; Blid v. Chicago & N. W. R. Co. 89 Neb. 689, 131 N. W. 1027.

The evidence of the engineer overcame any presumption of negligence, and left the plaintiff with the burden of proving actual neg-

ligence. Huber v. Chicago, M. & St. P. R. Co. 6 Dak. 392, 43 N. W. 819; Smith v. Northern P. R. Co. 3 N. D. 17, 53 N. W. 173.

Where on the former trial the record showed defendant was entitled to judgment for costs, the mere fact of a new trial and judgment for plaintiff does not entitle him to the costs of the former trial and appeal. Swingle v. Indiana State Bank, 41 Ind. 423; Carbon v. Stout, 7 Bush, 609; 14 Enc. Pl. & Pr. 941; Becker v. Holm, 100 Wis. 281, 75 N. W. 999; Robinson v. Ransom, 12 Ind. 474.

The costs of a first trial must be taxed in favor of the successful party on appeal, notwithstanding a later trial resulted in favor of the other party. Doyle v. Kiser, 8 Ind. 396; Excelsior Draining Co. v. Brown, 47 Ind. 19; Eigenmann v. Kerstein, 72 Ind. 81.

Persons who are not subpœnaed as witnesses, who do not testify, and are not necessary witnesses, are not entitled to fees. They were not called by plaintiff, and the presumption, therefore, is that they were not necessary. Parsons Band Cutter & Self Feeder Co. v. Sciscoe, 129 Iowa, 631, 106 N. W. 164, 6 Ann. Cas. 1015; Fisher v. Burlington, C. R. & N. R. Co. 104 Iowa, 588, 73 N. W. 1070; Terry v. Montgomery, 166 Ala. 130, 52 So. 314; Goodwin v. Smith, 68 Ind. 301.

*Knauf & Knauf,* for respondent.

There is only one deduction to be made from the evidence in this case, and that is, that the death of the four horses was due to defendant's negligence, and that same was of such a degree as to be wilful. Sheldon v. Chicago, M. & St. P. R. Co. 6 S. D. 606, 62 N. W. 955; Lighthouse v. Chicago, M. & St. P. R. Co. 3 S. D. 518, 54 N. W. 320.

By the verdict the jury necessarily found that defendant did not use ordinary care to avoid the collision, after the horses were discovered in a dangerous place. McDonell v. Minneapolis, St. P. & S. Ste. M. R. Co. 17 N. D. 606, 118 N. W. 819.

The trial court refused a new trial, and the supreme court will not disturb the verdict and the ruling of the trial court, and hold that the evidence is insufficient to support the verdict. This will not be done. 9 Current Law, 215, and cases cited; Hardt v. Chicago, M. & St. P. R. Co. 130 Wis. 512, 110 N. W. 427; Graham v. Bryant, 7 Cal. Unrep. 288, 87 Pac. 232; Missouri Real Estate Syndicate v. Sims, 121 Mo. App. 158, 98 S. W. 783; Shively v. De Snell, 35 Mont. 508, 90 Pac. 749; 3 Century Dig. 3928, 3948–3950, and cases cited.

The proof shows such a high degree of negligence that it amounts almost to a wilful act on the part of defendant. Carr v. Minneapolis, St. P. & S. Ste. M. R. Co. 16 N. D. 217, 112 N. W. 972; Clair v. Northern P. R. Co. 22 N. D. 120, 132 N. W. 776; Bishop v. Chicago, M. & St. P. R. Co. 4 N. D. 536, 62 N. W. 605; Granby v. Michigan C. R. Co. 104 Mich. 403, 62 N. W. 579; Harris v. Missouri, K. & T. R. Co. 24 Okla. 341, 24 L.R.A.(N.S.) 858, 103 Pac. 758.

Where a judgment for plaintiff is reversed by the appellate court, and a new trial is awarded, if plaintiff recovers on the second trial he is entitled to his costs below, on the former trial. Stoddard v. Treadwell, 29 Cal. 281; Gray v. Gray, 11 Cal. 341; Ex parte Burrill, 24 Cal. 350; 3 Kerr, Cyc. Code Civ. Proc. § 1027; Walker v. Barron, 6 Minn. 508, Gil. 353; Bank of Commerce v. Elliott, 109 Wis. 648, 85 N. W. 417; Jeffery v. Hursh, 58 Mich. 246, 25 N. W. 176, 27 N. W. 7; Garrison v. Singleton, 5 Dana, 160; Senior v. Anderson, 130 Cal. 290, 62 Pac. 563; Visher v. Webster, 13 Cal. 58; Fox v. Hale & N. Silver Min. Co. 122 Cal. 219, 54 Pac. 731; Franey v. Smith, 126 N. Y. 658, 27 N. E. 559; Jennings v. St. Louis, I. M. & S. R. Co. 59 Mo. App. 530; National Masonic Acci. Asso. v. Burr, 57 Neb. 437, 77 N. W. 1098.

Costs on *appeal* are the *only* costs to be recovered by the successful appellant; the costs of the former *trial* abide the event of the suit. Gray v. Gray, 11 Cal. 341; Duffy v. Hickey, 68 Wis. 380, 32 N. W. 54; Corbett v. Great Northern R. Co. 19 N. D. 450, 125 N. W. 1054, 23 N. D. 1, 135 N. W. 665.

BRUCE, J. This case has been before this court on two former occasions (19 N. D. 450, 125 N. W. 1054, 23 N. D. 1, 135 N. W. 665). It is an action to recover damages for the loss of certain horses killed by the defendant railway company upon its right of way. The appeal is based on certain errors of law alleged to have been committed in the introduction of evidence, in alleged erroneous instructions, and upon the claim that the case should have been taken from the jury on account of the fact that the evidence showed contributory negligence on the part of the plaintiff in failing to properly fence in his horses, and that there was at any rate no proof of any negligence or breach of duty on the part of the railway company.

The allegation of contributory negligence, however, may be entirely eliminated, as the whole case of the plaintiff is based upon the theory of what is known as the rule of the last clear chance. This theory, in fact, can in any event be the only theory advanced, as the horses in any view of the case were trespassers upon the track of the railway company. Corbett v. Great Northern R. Co. 19 N. D. 450, 125 N. W. 1054. The sole and only questions in the case, indeed, are whether, after seeing the stock upon the right of way, the engineer could have stopped or slowed down his train without endangering the lives of himself, or his fellow employees, or the property of the patrons of the road, and have thus averted the accident, and whether a reasonably prudent and duty-regarding man would and should have attempted to do so. The rule of the case is well and properly laid down by the trial court in its instruction to the jury, that "the duty of the engineer, after discovering the presence of animals on the tracks, is to use reasonable care to avoid an accident, if possible, with the means within his power, and if he does use such reasonable care, and you are satisfied from the evidence that he did in this case, then you must find your verdict for the defendant; that is, if you are satisfied that the engineer, considering his train and the speed with which it was moving, the grade, the danger to himself, and the other members of the train crew that might result from a collision, the light, and all other circumstances of the case, used reasonable care in the running and management of his train, then he was not guilty of negligence, and your verdict will be for the defendant. In considering the conduct of the engineer to determine whether or not he was negligent, I would instruct you that he is not required to keep a lookout for cattle on the right of way, and is not bound to presume that they may be there. He owed no duty to the plaintiff to assume that his cattle might be on the railroad company's right of way or property, and was under no obligation to keep a lookout for or take steps to prevent striking them until after he discovered them on the tracks in a place of danger. If after he discovered them on the tracks then he could not avoid the accident, you must find that the defendant is not liable in damages. The only negligence that is charged against the defendant is negligence in running and managing the locomotive and cars making the train, and the only matters that you need to consider in determining whether the defendant was

negligent was the conduct of the engineer in charge of the engine. No other issues are before you on the matter of defendant's negligence, and unless you find that the engineer was negligent in handling the train as he did, then you must find for the defendant. In considering the action of the engineer after the discovery of the animals on the tracks, you may consider that the engineer owed a higher duty to safeguard the lives of himself and the crew on the train than he did to protect the animals that had strayed upon the track, and if it would appear to a reasonably prudent engineer under the circumstances of this case to be safer management of the train to continue at the same speed rather than to set the brakes under the circumstances, then such action was reasonable and proper, and cannot be considered negligence. I charge you that none of the animals of the plaintiff had any right to be on the tracks or the right of way of the defendant, and they were trespassers, and that as to them the engineer was under no obligation to keep a lookout, and he was not negligent in failing to see them earlier. The only issue relating to his negligence that you are to consider is whether he was negligent in not avoiding the accident after he discovered them on the tracks in a place of danger." See Corbett v. Great Northern R. Co. 19 N. D. 450, 125 N. W. 1054; McDonell v. Minneapolis, St. P. & S. Ste. M. R. Co. 17 N. D. 606, 118 N. W. 819.

On these questions, that is to say, when the engineer first saw the horses, and whether after seeing them he exercised reasonable care to prevent the accident, taking into consideration his duty to himself and his fellow employees, there is serious conflict in the evidence, and there being such a conflict, we are of the opinion that the trial court did not err in submitting the case to the jury; nor do we believe that we are justified in asserting our judgment against that of the jury or in overruling its conclusion. The law in such cases has been repeatedly announced by this court. Farmers' Mercantile Co. v. Northern P. R. Co. 27 N. D. 302, 146 N. W. 550; Pyke v. Jamestown, 15 N. D. 157, 107 N. W. 359; Thomp. Neg. §§ 3790, 3791; Kunkel v. Minneapolis, St. P. & S. Ste. M. R. Co. 18 N. D. 367, 121 N. W. 830; Rober v. Northern P. R. Co. 25 N. D. 394, 142 N. W. 22.

According to the engineer's own statement, he first saw the animals when he was running along a perfectly straight grade at about daylight, that is to say, about 6:25 in the morning of March 12, 1907, according

to the Buford or 7:25 according to the Williston time. The grade was a down grade for three quarters of a mile and to a point about 2,000 feet east of Buford. West of that point the grade was level, or, according to one witness, slightly up hill. The accident happened about ten car lengths from the depot, and after the train had run about forty car lengths on the level grade. The track, as far as vision was concerned, was clear and unobstructed for half a mile east of Buford. The train was going at the rate of about 30 miles an hour and was working steam. The engineer testifies that he first saw the stock when they were some 600 feet in front of him; that they then started to run; that they galloped a short way; that he was 600 feet back, and that they were galloping ahead of him; that he did not make any attempt to either stop or lessen the speed of his train. He also testified that he could not have stopped his train in less than half a mile.

It may be that if the engineer's testimony was true, he could not have stopped his train in time to have averted the accident, but was it true, and was the jury bound to so consider it? He testified, it is true, that he did not see the horses until he was within 600 feet of them, and that he saw them as soon as it was possible to see them with the light of the headlight on the engine; that it was just before daylight; was dark and cloudy; and that he could not see beyond the rays of the headlight. But the witness Corbett testified that he told him after the first trial that the reason he did not stop his train was "that he thought the damn fools would get off the track," and all of the witnesses agree that the horses galloped for some distance ahead of the engine, and that there was no attempt whatever to even slow down the train. The failure to stop, it is. true, is explained by the engineer in the statement which is no doubt true, that if the accident had to happen, it would be safer to keep up full speed, as in that case the train would be less liable to be derailed. It is quite clear, however, that it is one thing to stop a train and another to slow it down; that much less time and space is needed for the latter operation, and that the difference in time and space might have materially aided the galloping animals, which were, of course, themselves making distance, and might, as far as we know, have been able to travel as fast as the slowed-down train. The testimony, too, of the engineer as to the distance at which he saw and could first have seen the horses, is by no means certain, and

under the conditions of the record was by no means undisputed. The witness Ryan testifies that he saw the horses when standing a distance of 80 rods away or 1,320 feet; the witness Holcomb when at a distance of from 25 to 40 rods; the witness Keplinger that they ran 50 or 60 rods ahead of the train before they were struck, and that he could have distinguished horses from cattle on the morning in question something like a quarter of a mile. The engineer also testifies that while he was approaching the cattle he was looking for the orders to be given upon the order board which was in front of the depot, and that he saw the green light while he was half a mile away. He could not very well have looked at this order board without looking along the track. It is true that the testimony is somewhat conflicting as to the degree of light which prevailed on the morning. The evidence, however, seems to show that the time of day was between break of day and sunrise, and though the engineer testifies that he could not see more than the length of the rays thrown by the headlight of his engine, one witness at least testifies that he could distinguish horses from cattle at a distance of a quarter of a mile. The testimony, too, of the engineer, is much weakened by the fact that, though he testified that he saw the horses some 600 feet, which is about fifteen car lengths distant, he testified at a former trial that he saw them only four or five car lengths ahead of him. It is also challenged by the statement of the witness Corbett that he told him in a conversation held soon after the former trial that the only reason why he did not stop was that he thought "the damn fools would get off the track."

The case was one for the jury to decide, and the court did not err in refusing to direct a verdict for the defendant. It is in many respects similar to those of Sheldon v. Chicago, M. & St. P. R. Co. 6 S. D. 606, 62 N. W. 955, and Lighthouse v. Chicago, M. & St. P. R. Co. 3 S. D. 518, 54 N. W. 320. In the former of these cases, the court said: "It is further contended that the court erred in admitting evidence as to the distance the animals could have been seen in the daytime on the track in the vicinity of the accident, but we are of the opinion that this evidence was properly admitted. Had the engineer stated how far the animals were ahead of the train when he first saw them, it would not have been conclusive upon the jury. They had a right to consider all of the facts and circumstances tending to show

that the engineer saw the animals sooner than his testimony would seem to indicate; and important among these facts would be the character of the track, the distance that objects could be seen thereon, the time of day, etc."

In the latter case, the court among other things said: "The engineer testified that he did not discover the horses on the track until he was within 30 or 40 feet of them. The conductor says he first saw them about the same time as the engineer, and when they were 25 or 30 feet from the engine. The jury by their special verdict found that they were 10 rods from the engine when they were first discovered by those in charge of the engine, and that reasonable efforts were not made after such discovery to stop the train. The only direct testimony as to when the horses were first discovered was as above stated, and necessarily comes from those in charge of the engine. The jury found against such direct testimony, so that we must look to the indirect and circumstantial evidence for support for the verdict, if it can be supported. The accident occurred in the evening, but the witnesses do not agree as to the conditions of the night. Defendant's witnesses say it was very dark, the engineer testifying, 'I don't know as I have ever seen it so dark.' On the other hand, one of the plaintiff's witnesses says that it was a bright night; that it was light enough so that he could and did distinctly see the horses at a distance of 120 rods. Another witness for the plaintiff says that he saw the horses immediately before the accident, running on the track before the engine, from his house, which was 140 rods from the track. How light or how dark it was, was material in assisting the jury to determine when the horses were in fact first discovered by those on the engine. The engineer had testified that the headlight was in proper order and was burning, that his eyesight was good, and that at the time of and immediately before the accident he was looking forward out of the front window of his engine, along the track. The conductor says that both he and the engineer were keeping a 'sharp lookout,' and each testifies that he did not discover the horses until within 30 or 40 feet of them. The jury might well regard these statements as conclusive under some circumstances, but not under others. They might accept it as a candid statement of the fact, if they believed from the evidence that it was a dark night, or they might decline to accept it if they found it was a bright, light night; for it is within the

28 N. D.—10.

ready knowledge of everyone that such a thing could hardly occur in the full light of midday, but might easily happen in the extreme darkness of a cloudy night. There was evidence from which the jury might have found that it was an extremely dark night, or that it was a very light night. Accepting the statement of plaintiff's witnesses that it was a bright night, that it was light enough so that they could and did see these horses at a distance of 120 or 140 rods, and the testimony of defendant's witnesses that they were at the time keeping a sharp lookout ahead, we think the jury might, without going outside the latitude of judgment and inference which a jury is entitled to exercise, regard the statements of defendant's witnesses as improbable in fact, and that they would be at liberty upon such evidence to find that these horses were discovered by those upon the engine sooner than as indicated by their testimony, unless they believed from the testimony of the engineer and other experts that the oscillating, vibratory motion of the engine, under the conditions of the track, filled in with cinders, the rate of speed, the dark color of the horses, and the fact that they were standing still in a bunch at the end of a bridge when they were struck, as testified to, would or did prevent such discovery. There was some evidence from experts tending to prove the difficulty of discerning, through partial darkness, objects standing still upon the track, from a moving engine, and as to the effect of atmospheric conditions upon the penetrating power of the rays from the headlight. While in our opinion this evidence was candid and intelligent, it was still for the jury to say how much such conditions interfered with the vision of those in charge of the engine, and to find whether under all the circumstances and conditions, the horses were in fact discovered in time to have prevented the accident. They found that they were . . . seen soon enough so that the engineer might, by reasonable effort, have avoided the collision. It is true the engineer and others upon the engine testified positively that they did not discover the horses until within 30 or 40 feet of them; but we are unwilling to say that even this unqualified statement might not be discredited by the jury if they believed from the evidence that surrounding circumstances and conditions made its truthfulness improbable. If it were very light, very bright, when this accident occurred, so that others could and did see these horses in motion at a distance of 140 rods, and if the

engineer was looking directly towards them, both of which facts there was evidence tending to prove, the jury might be justified in doubting the ingenuousness of that part of defendant's testimony.    We think, too, that the jury would not be precluded from finding that the other unfavorable conditions, such as the condition of the track, the motion of the engine, and the difficulty of perceiving from it objects standing still, were not sufficient to explain the nondiscovery of these horses sooner than as testified to, accepting the statements of defendant's witnesses that they were keeping a sharp lookout ahead.    The trial court, with superior advantages for judging of the candor and fairness and intelligence of all these witnesses, and with the impressions which the evidence made upon him still fresh in his mind, refused to disturb the verdict for any of the reasons now urged before us; and, while there may be doubt as to the correctness of the verdict, we think we should not be warranted in vacating it."    See also McDonell v. Minneapolis, St. P. & S. Ste. M. R. Co. 17 N. D. 606, 118 N. W. 819.

Again in the case of Clair v. Northern P. R. Co. 22 N. D. 120, 132 N. W. 776, we find the following: "When the engineer first saw the horse on the track it was about 200 feet ahead.    He testifies that he could have stopped the train within 300 feet that night.    He also testifies that he did nothing to stop it until he was enabled by the light to see that the object or shadow was a horse.    Owing to the curve in the track, he says he was unable to distinguish what the object was as soon as he could have done so if the track had been straight; and he further says that he set the emergency brake, although he knew that the train could not be stopped in time . . . to avoid killing the animal, if it did not jump from the track, as stock sometimes does.    He also says that if he had gotten the train under control, or started to do so immediately, he would not have struck the horse nearly so quickly.    The horse was running away from the train when the engineer first saw it, and when it was struck by the engine.    In view of these undisputed facts it remains for us to determine whether a verdict should have been directed for the defendant.    It has been held in this state, in several cases, that when animals are on the railway tracks between crossings, they are trespassers, and that railway companies owe no duty to watch for them, but that they are bound to use only ordinary and reasonable means to save the trespassing animals, after they are seen, consistent

with the safety of the train, its crew and passengers. Cumming v. Great Northern R. Co. 15 N. D. 611, 108 N. W. 798; Wright v. Minneapolis, St. P. & S. Ste. M. R. Co. 12 N. D. 159, 96 N. W. 324. It is admitted that the engineer did not sand the rails, and that doing this would have materially reduced the speed at once, in connection with the use of the emergency brake. The animal was running away from the train during all the time, which is a fact to be considered. In view of the entire record, we think it was a question for the jury to say whether all reasonable precautions were taken by the engineer, and whether the animal was killed by reason of not using ordinary and reasonable means to avoid the killing of it. . . . The rails were not sanded, and if this had been done the speed of the train would have been materially reduced at once. That the engineer should have endeavored to stop the train when he first discovered an object on the track is also a question concerning which the jurors and other impartial minds might disagree. Under the evidence it is shown that the animal was running, and that it would have had more time to escape if all precautions had been taken by the engineer. In view of these facts, we are satisfied that there was no error in submitting the issues to the jury, notwithstanding the conclusion of the engineer that no precautions on his part would have avoided the injury."

We realize that in his opinion in this case, Ex-Chief Justice Morgan distinguished the case from the one at bar as it appears upon the first appeal, in Corbett v. Great Northern R. Co. 19 N. D. 450, 125 N. W. 1054, by saying: "The facts of this case are clearly distinguishable from the present case. In the Corbett Case the evidence of the engineer is unequivocal that he did everything in his power to stop the train," and that the learned judge held that no question presented itself to throw any doubt upon the evidence of the train employees as to the exercise of the diligence required to protect the trespassing animals. The learned chief justice, however, misunderstood or misstated the Corbett Case, as neither in the former trial nor in the present one was there any evidence of any attempt to stop or to lessen the speed of the train, but, on the other hand, the free admission of the engineer that no such an attempt was made. The only reason, indeed, why this court reversed the judgment on the former appeal was that the plaintiff had introduced no evidence as to the distance that one could see

along the track in the morning in question, or as to whether the horses had run ahead of the engine or not, and the defendant's engineer had positively testified that the horses when discovered were only four or five car lengths ahead, and which statement he materially modified upon the second trial.

We find no reversible error in the admission of the testimony of the witness Corbett as to the hoof tracks upon the right of way, and that the horses appeared to have galloped along such right of way for some distance. Even though he did not, and could not, testify as to the exact time at which they were made, or whether they were made before or after the animals were discovered by the engineer, these facts could be shown by the location of the tracks as compared with the tool house, which seems to have been a pivotal point in the testimony of the witnesses as to when the engineer could or must have seen the animals. The witness testified as to his ability to distinguish from the tracks of the animals whether they were galloping, trotting, or standing still, and that this is possible is a matter of common knowledge. The tracks and their condition, indeed, was a matter pertinent to the issues in the case. It is true that the answer that the horses had run ahead of the train was not responsive to the question asked, which was merely how far those horses were running down the track, or galloping, but that when they were galloping, they were galloping ahead of the engine, is so abundantly proved by the testimony of the other witnesses and even by that of the engineer himself, the distance merely being the matter at issue that we hardly can believe that the defendant was prejudiced by that answer or by its lack of responsiveness.

Nor do we think that an error was committed in permitting the cross-examination of the engineer as to his duty to keep a lookout when approaching crossings. The question at issue was whether the engineer had seen the horses or not, or whether he told the truth when he said that he did not see them until within 600 feet. The question was proper on cross-examination as tending to test his credibility in this respect. He, too, had before stated, and without objection on the part of his counsel, that the rules of his company provided that he should be constantly alert and watch the track.

Defendant and appellant next complains that the court erred in taxing against it the costs of the former trial in the court below. Al-

though the judgment in the former trial was for the plaintiff, the defendant was successful in the appeal taken, and obtained a reversal of the judgment, a new trial being ordered. The defendant was allowed costs on its former appeal, and now complains of the action of the trial judge in awarding to the plaintiff the costs of both trials in the district court.

We think that it is correct in its contention. The general rule seems to be that where "a new trial is granted on the ground that the evidence is insufficient to support a verdict, or that the verdict is contrary to the evidence, the applicant is required to pay the costs of the former trial, as a new trial is granted as a matter of favor, but where the verdict is perverse, that is, so clearly against the weight of evidence or contrary to the evidence as to create the presumption of mistake or improper motives of the jury, a new trial should be granted without imposing costs. The test applied seems to be whether the party has in any way been in fault and made the new trial necessary. See 14 Enc. Pl. & Pr. 941, 944; Schweikhart v. Stuewe, 75 Wis. 157, 43 N. W. 722; Becker v. Holm, 100 Wis. 281, 75 N. W. 999; Jarrait v. Peters, 151 Mich. 99, 114 N. W. 870.

On the former appeal the judgment was reversed because of incorrect instructions and failure of proof, largely due to an incorrect theory of the case which was entertained by the plaintiff. The defendant was hardly in fault, and the new trial was not made necessary by it. It was, as a matter of fact, in the nature of a privilege to the plaintiff. These costs being improperly taxed, it also follows that the trial court was not justified in imposing the $15 terms upon the defendant upon the motion for a review of the same.

We do not believe, however, that the defendant is entitled to the $5 charge claimed by it under ¶ 3 of § 7174, Rev. Codes 1905, and which provides among the cost items, "to either party when a new trial shall be had for all proceedings after the granting of and before such new trial, $5." These costs are clearly costs of the new trial or proceedings. The charge does not belong to the former trial, nor yet to the former appeal. It therefore belongs to the successful party upon the second trial.

The judgment of the District Court is modified by reducing the amount awarded to the plaintiff to the extent of $89.30, the amount of

the costs which were improperly allowed. In all other respects, but with this modification, the judgment is affirmed, neither party to re- cover costs on this appeal.

Goss, J., being disqualified, did not participate.