# REINKE v. MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILWAY COMPANY.

### (135 N. W. 779.)

**Railroads — evidence — question for jury.**

1. Evidence examined, and although unsatisfactory and entitled to but slight weight, it was sufficient to go to the jury for a finding as to the running of certain trains which might have killed the stock of plaintiff.

**Rulings on evidence examined.**

2. Rulings on certain evidence examined and passed upon.

**Railroads — injuries to animals — presumptions.**

3. Section 4297, Rev. Codes 1905, makes the killing or damaging of horses or other stock by cars or locomotives along the railway prima facie evidence of carelessness and negligence on the part of the railway company. *Held*, that when the ownership and killing are proven, a presumption of law is raised that such killing was caused by defendant's carelessness or negligence; but that this presumption, when relied upon by plaintiff without other evidence of negligence, requires evidence of less weight to rebut it than would be necessary if plaintiff made proof of actual negligence.

**Railroads — injuries to animals — operation.**

4. In this state, as has been repeatedly held, railway companies are not required to keep a lookout from their locomotives for stock trespassing upon their right of way, outside of public crossings, depot grounds, and similar places.

**Railroads — injuries to animals.**

5. The negligence for injury to stock trespassing upon a railway track or right of way, outside of crossings, depot grounds, etc., is the negligence of the railway after the discovery of the stock in a place of danger.

**Railroads — injuries to animals — evidence.**

6. Evidence examined relating to certain trains of defendant company passing over the track where plaintiff's stock was killed, and *held* to rebut plaintiff's case made only by proof of ownership and killing, and to have entitled the defendant to a directed verdict, so far as the case related to such trains only.

Note.—The question of the duty of railroad employees to keep a lookout for live stock on the track is treated in notes in 24 L.R.A.(N.S.) 858, and in 25 L.R.A. 291.

As to the power of the legislature to make the killing of stock prima facie evidence of negligence, see note in 32 L.R.A.(N.S.) 227. See also note in 25 L.R.A. 162. And for presumption of negligence from injury to live stock from railway train, see notes in 15 L.R.A. 39, and 58 Am. Rep. 703.

**Railroads — injuries to animals — operation — instructions.**

7. When the plaintiff, in an action against a railway company for injury to stock trespassing upon its track, relies solely upon the statutory presumption of negligence, and does not submit direct proof as to which of several trains inflicted the injury, the trial court should instruct the jury as to the law applicable to each train which it is shown might have killed the stock, and with relation to the evidence relating to each such train.

**Railroads — injuries to animals — operation — instructions.**

8. Certain instructions examined and *held* erroneous because they permit the jury to find, as it undoubtedly did, that one of certain trains as to which the presumption of law referred to had been overcome, killed the stock belonging to plaintiff.

Opinion filed April 6, 1912.

Appeal by defendant from a judgment of the District Court for Richland County, *Allen,* J., in plaintiff's favor in an action brought to recover for injuries to plaintiff's horses, alleged to have been caused by defendant's negligence.

Reversed.

*J. A. Dwyer* and *Wolfe & Schneller (John L. Erdall* of counsel), for appellant.

Railway owes no duty to the animal or its owner to keep a lookout. Bostwick v. Minneapolis & P. R. Co. 2 N. D. 440, 51 N. W. 781; Hodgins v. Minneapolis, St. P. & S. Ste. M. R. Co. 3 N. D. 382, 56 N. W. 139; Corbett v. Great Northern R. Co. 19 N. D. 450, 125 N. W. 1054.

*Dan R. Jones* and *Purcell & Divet,* for respondent.

Instructions as to care only being requisite after discovery of the stock, unnecessary. Anderson v. Minneapolis, St. P. & S. Ste. M. R. Co. 18 N. D. 462, 123 N. W. 281.

Records similar to the self-serving record made by the defendant are to be taken by the jury for what they appear to be worth. Kitman v. Chicago, B. & Q. R. Co. 113 Minn. 350, 129 N. W. 844.

SPALDING, Ch. J.   This action was brought to recover for two horses alleged to have been killed, and for harnesses injured, by the negligent management and running of a locomotive and cars belonging to the appellant, on or about the 12th day of January, 1907, while on section 34, in township 13 North, of range 50 West, in Richland county, 3 or 4

miles northwest of the village of Hankinson. There is no dispute about the killing. The record shows that the horses must have been killed between 10 or 11 o'clock in the evening of January 11th, and about 2 o'clock in the afternoon of January 12th. They were not killed on a public crossing. The plaintiff recovered a verdict and judgment for the value of the horses and injury to their harnesses. Numerous errors are assigned on the admission and rejection of evidence, and on instructions to the jury.

For a proper understanding of the legal questions involved, we may say that the record discloses that the weather on the night of January 11, 1907, was cold; a strong wind was blowing, and it was snowing some or all of that night; and that trains running on defendant's line were constantly striking snowdrifts; that frost gathered on the windows of the engine cab, so the engineer could not see the track through the window any of the time; and that if he caught sight of the track at all it was by opening and leaning out of the cab window, and that at such times snow from the snowplow and steam from the locomotive filled the air and the engineer's eyes, and interfered seriously, if it did not wholly prevent his obtaining a view of the track ahead.

The engineers of two trains passing over the road, between midnight and 5 A. M. January 12th, testified. One of them, Welliver, testified as to the conditions, and that he did not know whether he struck any horses in that vicinity or not, but did not think he did so, and that he saw none on the track; and that he could not distinguish between striking horses and snowdrifts when he could not see. The second engineer, Freeborn by name, did not testify positively that he saw no horses, as he seems not to have been inquired of on that subject, but he likewise testifies as to the conditions and that it was impossible to get, during much of the time, a view of the track ahead, and that he did not know of striking any horses, but did remember striking snowbanks, and that he kept as good a lookout as could be kept under the conditions, which he fully described.

In addition to what we have said, he testified that the windows got icy and snowed up, and it was too stormy to hold his head out of the cab window; that snow would blow in his eyes and that the snow was mixed with steam from the engine, and altogether they prevented him keeping a watch ahead.

Some testimony was received tending to show the passage of two or three other trains over the track where the horses were killed, during the time in question, but none was offered concerning their operation. It is strenuously contended by appellant that there was no evidence warranting submitting the case to a jury. As to the trains on which Welliver and Freeborn were the engineers, we agree with the appellant for reasons hereafter stated. The evidence was very slight and unsatisfactory and entitled to but slight weight regarding other trains. We think there was sufficient, as it stood at the close of the trial, to justify the submission of the case as to such other train, if any, to the jury, under proper instructions. We cannot say how this might have been, had evidence, to which we shall refer later, not been excluded.

A train register, which was kept at Hankinson, a junction point, and testimony explaining it and the custom regarding the registry of trains arriving at, starting from, or going through Hankinson, were received in evidence. It appears to indicate that a train, known as No. 20, arrived from the west at 7 o'clock A. M., on the 12th. Another train appears, from such register, to have arrived from the west at 11:45 A. M., on the 12th.

The plaintiff relied solely on the statutory presumption of negligence, no proof being offered of actual negligence in the running of the train which killed plaintiff's horses, nor was it proved which of the trains mentioned did so. Section 4297, Rev. Code 1905, makes the killing or damaging of any horses or other stock by cars or locomotive along the railway prima facie evidence of carelessness and negligence on the part of the corporation. The purpose of this provision is explained in Corbett v. Great Northern R. Co. 19 N. D. 450, 125 N. W. 1054; and it is there held that when the plaintiff relies solely upon the prima facie case, made under the statute, less is required to rebut the prima facie case than would be necessary to rebut his evidence if the plaintiff relied upon actual proof of negligence.

We will now consider the proof regarding each of the trains shown to have passed over the track between the hours named, and those which may have passed over it. As to train No. 20, from the condition of the record relating thereto, as it stands, we think the jury might have inferred that such a train arrived in Hankinson at 7 o'clock on the morning of the 12th. The witness who testified in explanation of the entries

on the register explained that the record "evidently meant that train No. 20 was made up at Hankinson, and did not go further west." On motion his answer was stricken out on the ground that "it is not responsive to the question, and a conclusion of the witness from the entries before him; not the best evidence." The witness was used to explain the entries on the train register, and this was his interpretation of such entry after a foundation had been laid. His whole testimony was composed of opinions as to the meaning of the entries on the register. The explanation of No. 20 may have been entitled to little weight in the minds of the jury, but we think they were entitled to consider it for what it was worth, and the court erred in striking out such explanation, and but for this error further explanation might have followed.

As to the train registered as arriving from the west at 11:45 A. M., on the 12th, the testimony of the witness, Loomis, who explained the register, amounted to proof that the conductor and engineer of that train ran on another line of defendant's road, out of Hankinson, regularly during January, 1907, and that if they were running on the line northwest from Hankinson on the day in question, they were outside their regular employment. He knew this because he was employed on the other line during that month and met them on it. We think, under the circumstances, that this evidence, had it been received, was sufficient to cast the burden upon the plaintiff, if he contended that the 11:45 train occasioned his loss, to submit further proof of that fact; and that the striking out of the testimony of Loomis on this question was error.

One Fisher testified that at the time of the accident he was in the employ of the defendant company, and on a certain day—he could not give the day of the week or month—he went from Hankinson to Enderlin to dig out a train, and that he returned in the nighttime, on the passenger train, and, as near as he could remember, arrived at Hankinson about 11:30 that night; and that he saw the dead horses by the side of the track the next day. His testimony in chief was in answer to a question as to what time he got into Hankinson. "As near as I can recollect, about half-past 11, but I cannot tell exactly. When I got back to Hankinson, I went from the train to my home. It was about half-past 11 when I got home." In answer to another question as to when he saw the horses he replied, in part: "I got back from Enderlin at 7 o'clock in the morning." He also testified that when

he saw the dead horses there were what appeared to be horse tracks in the snow along the railroad track, between a crossing and where they were found; that these tracks went northwest, while the train he rode on ran southeast. This witness was testifying three years after the occurrence of the accident; and the uncertain character of his testimony as to the time renders it of very little value, and entitled to but slight weight, as proof of the passenger train concerning which he testified passing over the place of the accident at a materially different time from that shown by the register and other evidence, and it would be entitled to no greater weight if used to show the passage of a train not registered at all. But we think it entitled to some weight, and we cannot say that the court erred in letting it go to the jury.

The proof relating to the train of which Welliver was the engineer was sufficient to rebut the prima facie case made under the statute, under the rule laid down in Corbett v. Great Northern R. Co. supra, and Hodgins v. Minneapolis, St. P. & S. Ste. M. R. Co. 3 N. D. 382, 56 N. W. 139, and others cited in the opinions in those cases.

The evidence regarding the train of which Freeborn was the engineer, we think, taken in connection with the further explanation made of the conditions of the road, the weather, and the effect of the drifts and storm upon the ability of the engineer to keep a lookout, was sufficient to rebut the statutory presumption as to that train. Had it been shown definitely that these two trains were the only trains passing over the road between the hours in question, the motion of the defendant for a directed verdict, at the conclusion of the trial, should have been granted; but in view of the evidence, slight though it may be, of other trains, we must consider the case with reference to the rights of the parties, on the assumption that it was not shown that the two trains were the only ones passing over the road, but that there was some evidence of other trains, regarding which no explanation has been made on the part of the defendant, either as to negligence or as to killing or not killing the animals. The case appears to have been tried on the theory that it was the duty of the railway to keep a lookout for animals upon the track. Herein counsel and the court were in error. As held in the cases cited above, the only duty of the railway with reference to the plaintiff's stock was to use ordinary care after discovering it. It was not required to keep a lookout. See also Wright v. Minneap-

olis, St. P. & S. Ste. M. R. Co. 12 N. D. 159, 96 N. W. 324; Borneman v. Chicago, St. P. M. & O. R. Co. 19 S. D. 459, 104 N. W. 208; Memphis & L. R. Co. v. Kerr, 52 Ark. 162, 5 L.R.A. 429, 20 Am. St. Rep. 159, 12 S. W. 329. The instructions of the court to the jury should have been given in the light of the holdings of this court on this subject, and at the same time with reference to the testimony given by the two engineers. As the record stands, the jury may have found that the horses were killed by either one of the trains as to which we have held the prima facie case had been rebutted. Indeed, it is far more probable that the jury found that the killing was done by one of those trains than by either of the other trains as to which the evidence is so slight. It was the duty of the court to instruct the jury with reference to the law as applicable to any condition, as shown by the evidence; that is to say, he should have instructed them properly as to their duties regarding the trains referred to, which would have been, as we have held, that they could not find the defendant liable if they found either of those trains killed the horses. Had he done this and had the jury found in favor of the plaintiff, it would then appear that they had found the killing was done by a train as to which the statutory presumption had not been rebutted, and, in the absence of other prejudicial error, the judgment would be affirmed.

The first error assigned in the charge is in ¶ 3. Paragraphs 1 and 2 are unimportant, but ¶ 3 is as follows: "I instruct you further in this connection that proof of ownership, value, and killing by a train is sufficient to create a presumption of negligence; but I instruct you further in this connection that this is a rebuttable presumption and such a presumption as may be overcome by proof, that, as a matter of fact, the corporation in question, the Soo road, in this case, was in no wise guilty of either carelessness or negligence." It is apparent that this imposes upon the appellant a degree of care not required by law to overcome the prima facie case made by the statute. The care or negligence with which the plaintiff is concerned in such cases is only the care or negligence defendant exercises after the discovery of the stock in a place of danger, and the care required after such discovery is not such care as shows that the defendant was in *no wise guilty of either carelessness or negligence,* but is ordinary care; and ordinary care is defined by statute as such care as "persons of ordinary prudence usually

exercise about their own affairs of ordinary importance." Rev. Codes 1905, § 6694.

Paragraph 5 of the charge is also subject to criticism because it charged in effect that if the defendant did not exercise ordinary care in running its trains over the portions of the road in question at the time in question, *irrespective of the question of seeing the horses in a place of danger,* it would be sufficient to render the defendant liable. Paragraph 4 is open to the same criticism, and is erroneous for the same reason, though stating the converse of the proposition contained in ¶ 5.

Paragraph 7 states the law to be that if the animals were trespassing upon the tracks, the defendant is not absolved from preventing injury to them, if by the exercise of ordinary care it could have been avoided. This fails to limit the exercise of ordinary care as to plaintiff's horses to the time subsequent to discovery.

Paragraph 14 reiterated the statements to which we have made reference, and omitted to indicate that the care required of the railroad was after the discovery of the horses, and left the jury to infer that the question of their being seen was not involved.

But it is claimed by respondent that it was unnecessary to instruct as to care only being requisite after the discovery of the stock, because it is said in their brief that "there is no possible theory upon which that clause could be inserted. There is absolutely no testimony in that case that the stock was ever discovered." And it is then argued that such an instruction would have been in effect an instruction to the jury to return a verdict for the defendant. We are unable to understand how this changes the law. Counsel indicates that the principle is analogous to that discussed in Anderson v. Minneapolis, St. P. & S. Ste. M. R. Co. 18 N. D. 462, 123 N. W. 281. There is, however, a very marked distinction between that case and the case at bar. In the Anderson Case the main issue related to the fact of the killing. That was the contested question. The trainmen saw the horse near the track at the place of the injury. The injuries were such as might have been, and probably were, inflicted by a locomotive; and the circumstances as to the train, regarding which the testimony was given, were such as to warrant the jury in finding that that train inflicted the injury, and furthermore, other trains passed over the road after the

injury might have been inflicted, concerning the running of which no testimony was submitted, and it was held that as to such other trains the statutory case had not been rebutted. There would be some similarity had the court, in the case at bar, peremptorily instructed the jury that they could not find that either of the two trains of which Welliver and Freeborn were the engineers had injured the horses of respondent.

But it may be contended, and we think is, that the 6th paragraph of the charge corrects the errors to which we have made reference. That paragraph reads: "The jury are further instructed that the defendant railroad company has the right to use its tracks for the legitimate purpose of railway operation, and it is not bound in law to anticipate the presence upon its tracks, either of trespassing persons or animals, but it has the right to assume that no such trespassing persons or animals will be upon its tracks." This undoubtedly states the law correctly as far as it goes, but in its relation to the other parts of the charge and the circumstances of this case it is inadequate to inform the jury that the only care devolving upon the railroad in such case is after the discovery of the stock or that it need not keep a lookout. Standing alone with nothing further on that subject, it may be an obscure statement of the law; but in view of the paragraphs which we have quoted, and of the further fact that nowhere in the charge did the court define ordinary care or when the rule of ordinary care as to stock upon the track goes into operation, it was insufficient.

While engineer Freeborn was testifying he was questioned regarding his train being on time, and replied that it was not on time when it came through Hankinson, and that he got "particular orders outside of the regular line of orders at Hankinson that morning;" that all orders were delivered to him; that he did not have a copy of such order but that he supposed he destroyed it, and that he had no means of producing a copy. Whereupon the court excluded the testimony intended to show its contents from memory, for the reason that it would be hearsay and calling for a self-serving declaration. In this the court was in error.

Other errors are assigned, but those which we have called attention to are sufficient to guide the court on a new trial, and are all that are discussed and material. It is true that there was no evidence of any stock being seen, but when the court let the jury take into consideration

the trains run by the two engineers named, his attention was called to the law applicable in such case. The fatal vice of the charge lies in the fact that it left the jury free to find, as it undoubtedly did, that one of the trains, as to which the prima facie case had been met, and as to which there was no proof of actual negligence, had inflicted the injury.

The judgment is reversed and a new trial granted.