HERMAN STOEBER, Respondent, v. MINNEAPOLIS, ST. PAUL, & SAULT STE. MARIE RAILWAY COMPANY, a Corporation, Appellant.

(168 N. W. 562.)

**Railway company — killing of animals by — negligence — presumptive eevidence of — facts in case — presumption may be overcome by.**

1. The statute makes the killing of animals by a railway company presumptive evidence of negligence; but when, as in this case, the facts in regard to the killing are all put in evidence, the presumption of the statute does not apply. The proved facts clear away and supersede all presumptions.

**Gross negligence — of plaintiff — right of way — permitting animals to trespass on — railway company — not guilty of negligence.**

2. In this case it appears that plaintiff was guilty of gross negligence by permitting horses to trespass on the defendant's right of way at an early hour in the morning of March 31st, when the horses should have been in their stable. Defendant was guilty of no negligence which in any manner contributed to or caused the killing of the horses.

Opinion filed February 9, 1918.  Petition for rehearing denied July 9, 1918.

---

NOTE.—In the absence of a statute, the courts are practically unanimous in holding that a presumption of negligence does not arise against a railway company from the mere fact of injury to live stock by its trains, as will be seen by an examination of the authorities collated in a note in 15 L.R.A. 39, on presumption of negligence from injury to live stock by railway train.  On duty of railroad employees to keep a lookout for live stock on track, see note in 24 L.R.A. (N.S.) 858.

Appeal from the District Court of McHenry County, Honorable A. G. Burr, Judge.

Defendant appeals.

Reversed.

Albert Weber and John E. Greene (John L. Erdall of counsel), for appellant.

It is not the duty of men in charge of locomotives attached to trains to keep a constant lookout for trespassing animals. Munger v. Railroad Co. 5 N. Y. 349; Locke v. Railroad Co. 15 Minn. 350, Gil. 283; Stacey v. Railway Co. (Minn.) 43 N. W. 905; R. R. Co. v. Melton, 2 Lea, 262; Mears v. Railway Co. (Iowa) 72 N. W. 509; Rattanbury v. R. Co. (Mich.) 137 N. W. 679; Bostwick v. R. Co. 2 N. D. 449, 450; Hodgins v. R. Co. 3 N. D. 382; Wright v. R. Co. 12 N. D. 159; Corbett v. R. Co. 19 N. D. 450; Reinke v. R. Co. 23 N. D. 182.

The railway company is released from liability where the owner of animals persistently allows the gates in the fence to remain open, and permits such animals to stray through and to trespass upon the right of way. Such acts constitute gross negligence which prevents recovery. Swanson v. R. Co. (Minn.) 82 N. W. 670, 49 L.R.A. 625, notes, 626 and 630; Mannell v. R. Co. (Iowa) 45 N. W. 568; Peterson v. R. Co. (Wis.) 56 N. W. 639.

Bagley & Thorpe, for respondent.

Plaintiff established the prima facie negligence of defendant by proving the killing of the animals. Comp. Laws 1913, § 4644.

Defendant's headlight on the engine was equipped with a light of only 600 candle power. Such a light does not meet the requirements of our statute, and is of itself negligence per se. Comp. Laws 1913, § 4695; Morrison v. Lee, 22 N. D. 251, 133 N. W. 548; Wright v. Mpls. St. P. & S. Ste. M. R. Co. (N. D.) 96 N. E. 324; Campbell v. Walker (Del.) 78 Atl. 601; King v. Laycock Power House Co. (Ind. App.) 92 N. E. 741; Greyhck v. Stern, 154 Ill. App. 385; Palmer v. St. Louis & S. F. R. Co. 142 Mo. App. 440, 127 S. W. 96; Wabasha R. Co. v. Beedle, 173 Ind. 437, 90 N. E. 760.; Cook v. Chicago etc. R. Co. 153 Ill. App. 596; Short v. Philadelphia, B. & W. R. Co. (Del.) 76 Atl. 363; Neiman v. Channellene Oil & Mfg. Co. (Minn.) 127 N. W. 394; Louisville & N. R. Co. v. Hames (Ga.) 68 S. E. 805.

It is the rule that where the statute requires an act to be done, a

failure to do it as required is negligence *per se,*—will be declared negligence as a matter of law. Houston & T. C. R. Co. v. Wilson, 60 Tex. 142; Ind. B. & W. R. Co. v. Barnhart, 115 Ind. 399, 16 N. E. 121; Kelley v. Anderson (S. D.) 87 N. W. 579; A. & W. P. R. Co. v. Wyly, 65 Ga. 120; Fane v. Philadelphia Rapid Transit Co. 228 Pa. 471, 77 Atl. 806; Moore v. Maine C. R. Co. 106 Me. 297, 76 Atl. 891; O'Leary v. Chicago, R. S. & P. R. Co. (Iowa) 103 N. W. 302.

Our legislature having passed the law by which railroad trains are required to have headlights on their engines in main-line service of at least 1,200-candle power light when measured without a reflector, it must be presumed that such power light only is sufficient, and that any light of less power is insufficient and its use negligence *per se.* Hanger v. Chesapeake & O. R. Co. (W. Va.) 73 S. E. 713; Alabama G. S. R. Co. v. Jones, 71 Ala. 487; Western R. Co. v. Mitchel, 148 Ala. 35, 41 So. 427, 39 L.R.A.(N.S.) 271.

The question of whether or not defendant was required to keep a lookout is not in this case. Defendant did keep a lookout, and because of this the question here is, if defendant's engine had been provided with the light required by our statute, could the enginemen not have seen the stock in time to have prevented the killing. Jonesboro S. C. & E. R. Co. v. Guest, 81 Atk. 267, 97 S. W. 71; W. R. Co. v. Moore, 169 Ala. 284, 53 So. 744; Ford v. St. Louis R. Co. 60 Ark. 363, 50 S. W. 864; Oweutt v. Pac. R. Co. 85 Cal. 291, 24 Pac. 661; Chicago R. Co. v. Reid, 24 Ill. 144; Cincinnati R. Co. v. Hiltzhauer, 99 Ind. 486; Grayville v. Chicago R. Co. 112 Iowa, 738, 84 N. W. 846; Palmer v. St. P. R. Co. 38 Minn. 415, 38 N. W. 100.

The burden being upon defendant company to overcome the presumption of negligence, and it having failed to show a compliance with the provisions of our statute, that presumption was not overcome. Campbell v. Mobile & O. R. Co. 154 Ky. 582, 157 S. W. 931.

ROBINSON, J.  This is an action to recover from defendant for the negligent killing of several horses while trespassing on its right of way. The verdict was for $980. Defendant appeals from the judgment and from an order denying a motion for a new trial or a judgment notwithstanding the verdict.

One horse was run into and killed February 4, 1916, and for this

the defendant has offered to pay $150, the full value and a little more than the value of the same. Six horses were run into and killed by a passenger train on March 31, 1916, at 6:40 A. M. The question is one of negligence. The railway runs through the plaintiff's farm. His buildings are about a quarter of a mile north of the track. The railway has been fenced with gateways opposite a private crossing of the defendant. The gateways he failed to keep closed. He failed to keep his horses in the stable, where they should have been at 6:40 A. M., and by negligence he permitted them to break away, run through the gates which were left open, trespass on the right of way, and get killed. This contributory negligence of the plaintiff is clear and certain.

In regard to the neglect of the defendant it is fairly conceded that at the time of the accident the headlight on defendant's locomotive was of only 600 candle power, when the statute required a headlight of 1,200 candle power, and it is contended that with a legal headlight the engineer would have seen the horses in time to stop the train.

However, it does appear that in crossing the plaintiff's farm the road runs through a depression or valley, and that at the time of the accident a fog in the valley was so dense that it was opaque,—much the same as a dense fog arising from the steam of a locomotive. The testimony clearly shows that the lack of powerful headlights was not the proximate or real cause of the accident, and that no headlight would have been sufficient to penetrate the fog and discover the horses in time to stop the train. It is shown that at the time of the accident the engineer was making a vain attempt to look through the fog, yet that fact is wholly immaterial.

In this state the law is well settled by repeated adjudications that railway companies are not required to keep a lookout from their locomotives for stock trespassing on their right of way outside of public crossings, depot grounds, and similar places. That in such a case as this the killing of stock trespassing on a railway track is negligence of the company only after the discovery of the stock in a place of danger. Reinke v. Minneapolis, St. P. & S. Ste. M. R. Co. 23 N. D. 182, 135 N. W. 779; Corbett v. Great Northern R. Co. 19 N. D. 452, 125 N. W. 1054. Clearly at the time of the accident when the horses should have been in their stable the defendant was under no obligation to keep a lookout for the horses, and a lookout would have been of no

avail even with the most powerful headlight. The statute makes the killing of animals by a railway company presumptive evidence of negligence; but when as in this case the facts in regard to the killing are put in evidence the presumptions of the statute do not apply. The proved facts clear away and suspend all presumptions.

The whole defense and the expenses of the litigation have been on the claim for the killing of the six horses on March 31, 1916, and not on the killing of the one horse for which the defendant offered to pay $150, which was more than its value.

Hence, it is ordered and adjudged that on payment of said $150 to the clerk of the court for the use of the plaintiff, the District Court shall enter judgment in favor of the defendant notwithstanding the verdict.

GRACE, J. (dissenting). The action is maintained to recover from the defendant the value of certain horses killed by the defendant railway while such horses were upon defendant's railway, such horses having without any wilful negligence of the plaintiff escaped from plaintiff's premises and gone upon the right of way. One horse was killed February 4th, and six on March 31, 1916, at about 6:40 A. M. It appears that the railway runs through plaintiff's farm. His buildings are situated 80 rods or more on the north side of the track. The right of way of the railway company is fenced on either side of the railroad on plaintiff's land. Extending over the right of way and railroad at a certain point on plaintiff's land is a private railroad crossing, constructed in compliance with § 4645, Comp. Laws 1913. Immediately in line with such crossing on either side of the right of way is a gate. Under said section it is the right of any private landowner, situated as plaintiff, to have such crossing, and it is the duty of the railroad company to keep the same in good repair. It is the duty of the defendant to keep the whole of the crossing extending from the line of right of way on one side to the line of right of way on the other side, all in good repair. The fence on either side of the right of way belongs to the defendant. It is also its duty to keep that in good repair and to keep the gates in good repair at the crossing. It is also the defendant's duty to keep that part of the crossing where the gates are situated in such condition that the gates may be easily opened or

closed. It appears in this case that large quantities of snow had collected at the gates, thus making it very difficult for the same to be opened or closed. It is a matter of common knowledge in this northwestern country that fences or gates will impede the progress of snow and cause it to bank up about the gates or fences. It is a matter of common knowledge that railway companies construct snow fences for the purpose of stopping the snow at such fences, and thus preventing it from getting on the right of way, and thus interfering with the operation of the railroad. It is also a matter of common knowledge that railroads have section crews who go over usually every day all of the railroad tracks within their respective sections. It appears to us that it is the duty of the railroad company to keep its crossing and causeway all in such condition that the gates in the fence referred to could be easily opened or closed.

Several of the states have statutes providing for the erection and maintenance of the fences and gates upon the right of way of the railway company, and such statutes have been construed so far as the gates are concerned to mean that they shall maintain the gates closed. That is, that they shall exercise some diligence to see that the gates are kept closed. West v. Missouri P. R. Co. 26 Mo. App. 344; Nicholson v. Atchison, T. & S. F. R. Co. 55 Mo. App. 593; Estes v. Atlantic & St. L. R. Co. 63 Me. 309; Waldron v. Portland, S. & P. R. Co. 35 Me. 422; Jacksonville, T. & K. W. R. Co. v. Harris, 33 Fla. 217, 39 Am. St. Rep. 127, 14 So. 726; Chicago, B. & Q. R. Co. v. Sierer, 13 Ill. App. 261; Wabash R. Co. v. Perbex, 57 Ill. App. 62; Aylesworth v. Chicago, R. I. & P. R. Co. 30 Iowa, 459; Wait v. Burlington, C. R. & N. R. Co. 74 Iowa, 207, 37 N. W. 159.

There is another rule adopted by other courts directly opposite to the rule which we have referred to. We are of the opinion, however, that the rule we have stated is a reasonable and salutary rule. And we are of the opinion that where, as in this state, the statute provides for private crossings and proper maintenance of them by the railroad company, and the proper maintenance of the cattle guards and causeways on such right of way, and also provides for the erection and maintenance of fences upon the right of way of the railroad company under certain conditions, that it is therefore the duty of the railroad company to maintain such private crossings and such fences and gates

in proper condition, and that it is the duty of the railroad company to exercise reasonable care to keep such fences in good repair and such gates closed; and that it must necessarily follow that if the defendant exercised no care in and about the maintenance of its gates in proper condition, and the maintaining of the right of way where such gates are situated in such condition that the gates could easily be opened or closed, and exercised no care about such private crossing to see that such things were done, it is guilty of negligence.

Our statute also provides that locomotives shall have headlights of not less than 1,200 candle power. It is conceded in this case that the locomotive in question did not have a headlight of more than 600 candle power. The majority opinion brushes this matter aside as immaterial. We do not think it is immaterial. The testimony in this case shows that the engineer was keeping a lookout. If this is true, and there had been a 1,200-candle power headlight instead of a 600 on the locomotive, the engineer might have seen the horses and thus averted the damage. We are of the opinion that the railroad company is not relieved from all duty except at public crossings, depot grounds, and similar places. In addition to this, we are of the opinion that they must use all reasonable care and caution to prevent the killing or injuring of stock, even though such stock get upon the right of way and roadbed of the defendant at other places than public crossings and public places. Railroad companies should not be put in a different class than other property owners. The owner of any property must use it with an ordinary degree of care so as not to damage others in their property. In all probability the railroad company would not be held to as high degree of care in passing over the distance between one public crossing and another, but certainly it cannot be said that it shall be relieved from all care and be under no obligation to exercise caution in the use of its property so as to be irresponsible in any damage which it may do by reason of its lack of caution and reasonable care, under the circumstances. The failure of the defendant to have a legal headlight as provided by statute was a question of negligence properly submitted to the jury. The further question of the density of the fog, whether the fog was so dense that the engineer by the exercise of proper caution and care could not have seen the horses, was a question of fact for the jury. The jury decided all questions of fact in favor of the

plaintiff. Under the theory of the majority decision, no matter how much valuable stock might accidentally be upon the right of way of the defendant, or railroad track, not in a public place, the defendant would be under no obligation to use any care to prevent injury or damage. We do not believe such rule is a salutary one, nor that it is the weight of authority, and it is contrary to our express statute.

Section 4644, Comp. Laws 1913, is as follows: "The killing or damaging of any horses, cattle or other stock by the cars or locomotives along a railroad shall be prima facie evidence of carelessness and negligence on the part of the corporation."

There is no dispute in this case but that plaintiff established a prima facie case. He established the ownership of the horses and the fact of their killing. It then became incumbent upon the defendant to overcome the prima facie case thus established by the plaintiff by showing that it was free from any negligence. After the submission of the testimony of the defendant, which defendant claimed showed or tended to show that it was free from negligence, the question of negligence became a question of fact for the jury, and the jury could find, after the defendant had given its evidence upon which it relied to show it was not negligent, that such testimony overcame the prima facie case established by plaintiff. The jury by its verdict, however, found in favor of the plaintiff, thus necessarily finding under all the testimony that the defendant was guilty of negligence, and as a result thereof plaintiff sustained a loss to the extent of the value of the horses killed by the defendant's locomotive and train. The question of the negligence of the defendant as well as that of the contributory negligence of the plaintiff, if any, were questions of fact to be submitted to the jury, and which were submitted to the jury and determined in favor of the plaintiff. The decision of the majority and the reasons therein set forth for reversing the judgment entirely nullifies § 4644. The decision in effect holds that the defendant on its line of railway between public crossings, or any other places than public crossings or public places, is under no necessity to keep any lookout in order that it may not do damage to stock. This holding nullifies the statute above quoted. That statute does not point out any particular place or places upon the railroad where, if stock are trespassing, the company shall not be liable if it, through its negligence or want of proper care, kills or injures

such stock. That statute includes all of the defendant's line of railway within this state whether it be at public crossings, public places, or upon defendant's line of railway between public crossings. That statute makes no exception. Why then should it not be given effect in the manner in which its plain terms indicate? If the legislature wishes to enact a law that the killing or injuring of stock on the line of defendant and other railroad corporations, not at public places and on its line between public crossings, is not actionable negligence, the legislature in all probability has authority to do so. But until the legislature does enact such a law, certainly it is not within the power, nor is it the duty of the court, to proceed just as if such law were upon the statute books. The section above referred to is plain and can have but one construction, and that is that the killing or damaging of stock by the cars or locomotives along any point of the railroad is prima facie evidence of carelessness or negligence on the part of the railroad. This is the meaning of the statute, and the only meaning it has. In this case the defendant failed before the jury to clear itself from its negligence, and the verdict of the jury should stand. The verdict of the jury should not be lightly disregarded. We should not too easily forget that the jury is one of the main elements of our government. To it is delegated the exclusive right of passing upon questions of fact in actions for the recovery of money only. In such case the right of the trial by jury and the right of the benefit of its verdict has its inception in the Constitution. The rights, powers, and duties of the jury in a case such as the one at bar are entirely separate and distinct from any powers possessed by the court, and the court is without either constitutional or statutory authority to interfere with the verdict of the jury when the same is supported by testimony in the action. The court in this case cannot say that the verdict is not supported by testimony. The very fact that the plaintiff has made a prima facie case under the statute is sufficient to sustain the verdict, and certainly, after all the testimony is submitted on behalf of the plaintiff and defendant and the jury then finds a verdict in behalf of the plaintiff, the verdict of the jury becomes conclusive upon all questions of fact, and the court is without any authority in such case to interfere with such verdict.

40 N. D.—9.

PER CURIAM. In the petition for rehearing filed herein, the respondent directs attention to that portion of the majority opinion wherein it is stated that the plaintiff was negligent in allowing his horses to get upon the right of way of the defendant company, and that he should consequently be barred from recovery on account of such contributory negligence. We are of the opinion that the question of the defendant's liability does not properly depend upon the question of contributory negligence, but that it does depend wholly upon the defendant's negligence. That portion of the opinion referring to the question of contributory negligence is therefore to be regarded as *dictum*.

The petitioner also contends with much force that the decision in this case negatives the effect of § 4644 of the Compiled Laws of 1913. The section reads: "The killing or damaging of any horses, cattle or other stock by the cars or locomotives along a railroad shall be prima facie evidence of carelessness and negligence on the part of the corporation." While the effect of this statute was carefully considered at the time the conclusions stated in the majority opinion were announced, it might be well to state briefly the reasons which led to the conclusions as to the meaning of the statute. The statute does not announce a rule of liability. Nor does it evidence any attempt on the part of the legislature to require railroad corporations to compensate for the killing of all live stock that may be killed by their cars or locomotives. The statute only creates a presumption of negligence taking the place of evidence which would otherwise be required to establish it. See Hodgins v. Minneapolis, St. P. & S. Ste. M. R. Co. 3 N. D. 382, 56 N. W. 139; Corbett v. Great Northern R. Co. 19 N. D. 457, 125 N. W. 1054; Reinke v. Minneapolis, St. P. & S. Ste. M. R. Co. 23 N. D. 182, 135 N. W. 779. A statute which would attempt to create an absolute liability would be of doubtful constitutional validity. See cases cited in 25 L.R.A. 162, note. In view of the fact that the statutory presumption arises without any evidence of negligence, it has been held in this jurisdiction that less evidence is required to rebut it than would be necessary if the plaintiff made proof of actual negligence. Reinke v. Minneapolis, St. P. & S. Ste. M. R. Co. supra. Inasmuch as the statute only purports to lay down a rule of evidence which dispenses with the necessity of the plaintiff, in the first instance, offering proof of negligence, it would seem that the duty of the court in determining the

weight and sufficiency of the evidence would be the same as though the statute did not exist, except that, where the statutory presumption is relied upon, the plaintiff's case has not the advantage of being supported by evidence.

Without the statute, it would be the duty of the court to determine the question of the sufficiency of the evidence to show negligence, and in doing so it would be required to consider the testimony offered by both the plaintiff and defendant. To hold that the statute changes the law in this respect would be tantamount to saying that, in every case where live stock is killed or injured by cars or locomotives along a railroad, the case must be submitted to a jury, no difference how conclusively the defendant may be able to establish the lack of negligence. That the statute has not changed the law in this respect has long been settled in this jurisdiction. Hodgins v. Minneapolis, St. P. & S. Ste. M. R. Co. supra; Cumming v. Great Northern R. Co. 15 N. D. 611, 108 N. W. 798.

The error into which counsel have fallen is apparently attributable to the inclination to treat the statute as prescribing a rule of liability instead of a rule of evidence.

In the case at bar, it is only by the remotest speculation that negligence could be found, if any weight is to be attached to the testimony of the defendant's witnesses. Their testimony is not contradicted upon any material question; but, on the contrary, the circumstances surrounding the accident tend to support it. The apparent conflict in the testimony relative to the foggy condition of the atmosphere is wholly explained by the difference in time to which the testimony of the different witnesses relates. The record shows clearly that the accident occurred at about 5 :40 in the morning, and the testimony of the plaintiff's witnesses as to the condition of the atmosphere relates to a time approximately an hour later. In this state of the record, the jury was not warranted in disregarding the testimony of the defendant's witnesses, which shows conclusively that the defendant was not negligent.

The order of reversal, however, should be modified to the extent of allowing the plaintiff and respondent to recover the costs incurred in the lower court prior to the time of the offer of judgment for $150.

With this modification of the original order, the petition for rehearing is denied.

GRACE, J., adheres to his original dissent.