[File No. 6565.]

GEORGE SNYDER, Respondent, v. NORTHERN PACIFIC
RAILWAY COMPANY, a Corporation, Appellant.

(285 N. W. 450.)

Opinion filed April 19, 1939.   Rehearing denied May 1, 1939.

*Conmy & Conmy* and *Zuger & Zuger,* for appellant.

*Charles L. Crum,* for respondent.

BURR, J. The plaintiff sues to recover for the destruction of live-stock, claiming that on August 21, 1936, one of his mares "undertook to cross the defendant's railroad on the section line between sections seven and eight, in township one hundred thirty-eight, north of range seventy-nine. . . . That while said section line is a public highway the defendant maintained a gate along and across said highway immediately north of its tracks and said defendant was careless and negligent in permitting the gate across said highway to be open, so as to permit livestock to travel on said highway across the defendant's rail-road;" that the defendant so carelessly and negligently "managed one

of its locomotives and cars that the same ran across and over . . ."
the mare, killing her to plaintiff's damage in the sum of five hundred
dollars.

The defendant denies negligence on its part and alleges "that the
destruction of said stock was occasioned and caused by plaintiff's own
negligence, and plaintiff's own negligence *contributed* thereto."

The defendant demanded a bill of particulars with reference to the
alleged negligence of the defendant, and in the bill furnished plaintiff
specified:

"1. The defendant was negligent in running and operating its loco-
motive and cars at an excessive rate of speed.

"2. Negligence of the defendant in failing to stop its locomotive and
cars in time to prevent the destruction of said mare and foal.

"3. Negligence of the defendant in permitting the gate in the de-
fendant's highway fence immediately north of the place where said
mare and foal were killed by the defendant's engine, to be open."

At the close of plaintiff's case defendant moved to dismiss the action
on the ground that the plaintiff had failed to make out a prima facie
case and also asked the court to direct the jury to return a verdict in
favor of the defendant on the ground that the plaintiff has failed to
prove any negligence on the part of the defendant. This motion was
overruled and at the close of the entire case was renewed and again
overruled.

The jury returned a verdict in favor of the plaintiff and defendant
moved for judgment notwithstanding the verdict, which was denied.
Judgment was entered in accordance with the verdict and the defendant
appeals, assigning as error that the court erred in overruling defend-
ant's objection to certain questions, erred in denying defendant's mo-
tion for dismissal and motion for directed verdict, erred in denying de-
fendant's motion for judgment notwithstanding the verdict, and erred
in its instructions to the jury in a matter set forth in the specifications.
However, the case is determined on the sufficiency of the evidence and
the statute hereinafter cited.

The specification of insufficiency of the evidence urges that there is
a total failure of proof "to show any negligence on the part of the de-
fendant proximately causing the loss and injury in question," and

"that the undisputed testimony shows plaintiff to have been guilty of contributory negligence as a matter of law."

At the time and place involved defendant's railroad ran approximately east and west, was double-tracked, with a space of seven or eight feet between the tracks, on an embankment twenty-five to thirty feet wide. As pasture land for his band of horses—about twenty-five in all —the plaintiff had leased one hundred sixty acres directly north of defendant's right of way and beginning on the west side of section seven, running east across the entire section and eighty rods east into section eight. On both sides of its tracks defendant maintained a right-of-way fence of woven wire with barbed wire on top, running away beyond the pasture east and west, and at the time involved the north fence was in good repair. On the west side of the pasture there was a fence running north and south to and connecting with defendant's fence along the north side of the right of way. Plaintiff had no fence on the east side of his pasture field in section eight, depending upon Apple Creek as a barrier to his horses leaving the pasture. The section line running north and south between sections seven and eight was a regular highway, open to traffic. Plaintiff testified it was a public thoroughfare with public crossing, had been declared open for public travel, and he knew "the amount of traffic that goes over it;" that people pass back and forth on it, but it is not graded; that "it is just a road. The Federal men go through there every day." However, there was a gate across this section line in the right-of-way fence of the defendant on the north side of the railroad track and another gate on the same section line on the south side of the railroad track. The gate on the north side of the right of way across the public road on the section line was placed there by the railroad company, and anyone driving on this road from the north or south across the railroad track must needs open the gate. The section line road was graded on the right of way up to and across the railroad track on both sides, with a plank crossing over the tracks. The plaintiff maintained no barrier whatever on either side of the section line and road between sections seven and eight to prevent his horses from straying on to the right of way through these gates. About 4 P. M. of the day of the accident the section foreman found the gates open and some horses on the right of way. He

drove the horses into plaintiff's pasture and closed and fastened the gates.

. The undisputed testimony shows that about 7 :55 P. M. on the evening of that day the through passenger train of the Northern Pacific running westward—known as the "fast train"—was traveling at the rate of sixty miles an hour. The engineer, who was keeping a lookout on the north side of the train, blew the whistle as he came near the crossing, and when about one hundred fifty feet east of the crossing the fireman, who was keeping a lookout on the south side of the train, noticed some horses in a depression on the south side of the right of way. This place was about twenty feet deep, and owing to its condition the horses could not have been seen earlier. He saw the mare and a colt come up out of the south ditch on to the railroad track and immediately notified the engineer. The mare crossed the road, ran along the track until struck by the train about fifty feet west of the section line and was hurled into the north ditch about one hundred fifty feet farther on west. From the time the horses were discovered coming out of the south ditch to the time the mare was struck the train covered a distance of approximately two hundred feet at the rate of sixty miles an hour. It was twilight, not quite dark, but the headlight was shining. The engineer testified that in order to stop the train and avoid the accident with due regard to the safety of the passengers, he would have been required to slacken speed a mile farther east.

. The testimony further shows that just about dusk on August 21 the plaintiff entered his pasture on the west side to check up on his horses. He found the mare's colt and one other horse in his pasture, but not the mare. Owing to the convolutions of the creek which ran there the search required some time. When he reached the section line between seven and eight he found both gates across the section line open. Going through into the territory south of the railroad track he found some of his horses. By this time it was dark. Owing to the darkness he judged himself unable to drive the horses back to his own pasture and he left them in the pasture south of the railroad track, a pasture controlled by one Smith, and closed both gates. In the morning he sent employees to make a search, and as the mare could not be found he went himself about 8 o'clock and found the gates closed. He discovered blood at or near the place where the section line crossed the rail-

road track, and following the track west a short distance he came upon the carcass of the mare lying on the north side of the right of way. Plaintiff testifies that the fence on the right of way was in good condition and he predicates his charge of negligence on the doctrine of "prima facie evidence" set forth in § 4644, Comp. Laws, on the fact that he found the gate open on the evening of August 21, and that at some time prior thereto he had asked permission from the section foreman to put a lock upon the gate and the request was denied.

There is no essential dispute as to the facts, and it must be clear the mare had been killed by the time plaintiff was searching for her on the evening of the 21st. Someone had come to the section line road and passed through the gates, leaving them open, after the section foreman had closed them. Thus, the horses left plaintiff's pasture for the south side of the right-of-way and the mare, in attempting to return to the pasture, was struck by the train, but the colt got back. The evidence shows no negligence on the part of the defendant in the speed of the train or otherwise.

Plaintiff urges that because of the provisions of § 4644 of the Compiled Laws, to wit: "The killing or damaging of any horses, cattle or other stock by the cars or locomotives along a railroad shall be prima facie evidence of carelessness and negligence on the part of the corporation," the statutory "prima facie evidence" is sufficient to take the case to the jury and the verdict rendered is therefore binding.

We need not pass upon the portion of the instructions said to be erroneous. The portion objected to deals with the alleged negligence of the defendant in the light of the statute, but it is not all of the instruction with reference thereto.

This excerpt from Stoeber v. Minneapolis, St. P. & S. Ste. M. R. Co. 40 N. D. 121, 130 et seq. 168 N. W. 562, 565 et seq. dealing with this statute is pertinent to this case:

"This statute does not announce a rule of liability. . . . The statute only creates a presumption of negligence taking the place of evidence which would otherwise be required to establish it. See Hodgins v. Minneapolis, St. P. & S. Ste. M. R. Co. 3 N. D. 382, 56 N. W. 139; Corbett v. Great Northern R. Co. 19 N. D. 457, 125 N. W. 1054; Reinke v. Minneapolis, St. P. & S. Ste. M. R. Co. 23 N. D. 182, 135 N. W. 779. A statute which would attempt to create an absolute lia-

bility would be of doubtful constitutional validity. See cases cited in 25 L.R.A. 162, note. In view of the fact that the statutory presumption arises without any evidence of negligence, it has been held in this jurisdiction that less evidence is required to rebut it than would be necessary if the plaintiff made proof of actual negligence. Reinke v. Minneapolis, St. P. & S. Ste. M. R. Co. supra. Inasmuch as the statute only purports to lay down a rule of evidence which dispenses with the necessity of the plaintiff, in the first instance, offering proof of negligence, it would seem that the duty of the court in determining the weight and sufficiency of the evidence would be the same as though the statute did not exist, except that, where the statutory presumption is relied upon, the plaintiff's case has not the advantage of being supported by evidence.

"Without the statute, it would be the duty of the court to determine the question of the sufficiency of the evidence to show negligence, and in doing so it would be required to consider the testimony offered by both the plaintiff and defendant. To hold that the statute changes the law in this respect would be tantamount to saying that, in every case where live stock is killed or injured by cars or locomotives along a railroad, the case must be submitted to a jury, no difference how conclusively the defendant may be able to establish the lack of negligence. That the statute has not changed the law in this respect has long been settled in this jurisdiction. Hodgins v. Minneapolis, St. P. & S. Ste. M. R. Co. 3 N. D. 382, 56 N. W. 139, supra; Cumming v. Great Northern R. Co. 15 N. D. 611, 108 N. W. 798."

The undisputed facts destroy entirely all the effect of this "prima facie evidence." There is not the remotest indication of negligence on the part of the defendant if we are to attach any weight whatever to the testimony of its witnesses, and there is nothing to contradict these witnesses except what the plaintiff says is the import of § 4644 of the Compiled Laws. Without discussing the question of any right or duty on the part of defendant to place any barrier whatever across the highway between sections seven and eight, and proceeding on the theory that the company had undertaken to treat the gates as part of their right-of-way fence and to afford the plaintiff the same protection by means of the gate which was afforded by the other portions of the fence, the evidence shows the employees to be solicitous for the welfare of plaintiff's band

of horses. All of the testimony shows that whenever they found the gate open they closed it. They even had turned horses back into the pasture on the theory they belonged to the plaintiff. Employees had closed the gates at 4 o'clock in the afternoon. There is nothing to show that any employee ever saw the gate open after that time. Much is made of the fact the section foreman declined to allow the plaintiff to put a lock on the gate. How he could grant such request in the face of the fact that it was a regular highway it is difficult to see, and, in any event, there is nothing to show that he had any authority to permit such an arrangement.

There is nothing to show how far the horses would have to go east to get around the fence for we do not know how far east of the pasture it extended. The horses would need to go at least eighty rods east on section eight to get out of the pasture. Plaintiff claims the pasture was protected on that side by the creek and there was too much water in it to permit the horses to ford it or swim it. Consequently, the only way the mare could have got on to the right of way was through this gate on the section line. Somebody left it open between 4 P. M. and the time plaintiff closed it that night. The horses had strayed through on to the right of way, and, being frightened by the approaching train, the mare had attempted to work her way back. If accompanied by her colt, the colt and one other horse escaped and got back into the pasture. The remainder of the band was found by the plaintiff south of the railroad track that night, and very clearly after the accident, but owing to the darkness it was impossible for the plaintiff to count and identify his horses. He closed the gate and waited for the morning.

Appellant urges that the instruction objected to placed too much of a burden upon the defendant to disprove negligence; but even if the court did not err therein, there is nothing to show any negligence on the part of the defendant, and therefore the order denying the motion for judgment notwithstanding the verdict is reversed, and the case is remanded to the district court with directions to enter judgment for the defendant.

NUESSLE, Ch. J., and BURR, CHRISTIANSON, and MORRIS, JJ., concur.